PETER K. STRIS (SBN 216226)
  peter.stris@strismaher.com
BRENDAN S. MAHER (SBN 217043)
  brendan.maher@strismaher.com
VICTOR O'CONNELL (SBN 288094)
  victor.oconnell@strismaher.com
STRIS & MAHER LLP
725 South Figueroa Street, Suite 1830
Los Angeles, CA 90017
Telephone: (213) 995-6800
Facsimile: (213) 261-0299

SHAUN P. MARTIN (SBN 158480)
  smartin@sandiego.edu
University of San Diego School of Law
5998 Alcala Park, Warren Hall
San Diego, CA 92110
Telephone: (619) 260-2347
Facsimile: (619) 260-7933

*Attorneys for Plaintiffs*
JOHN BALEJA, on behalf of himself
and all others similarly situated

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| JOHN BALEJA, on behalf of himself and all others similarly situated,<br><br>                Plaintiffs,<br><br>        v.<br><br>NORTHROP GRUMMAN SPACE & MISSION SYSTEMS CORP. SALARIED PENSION PLAN; NORTHROP GRUMMAN BENEFIT PLANS ADMINISTRATIVE COMMITTEE; NORTHROP GRUMMAN CORPORATION; and DOES 1 through 10, inclusive,<br><br>                Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF ERISA** |

1. Plaintiff John Baleja, individually and as a representative of a class of similarly situated persons, brings this action against the Northrop Grumman Space & Mission Systems Corp. Salaried Pension Plan (the "Plan"), Northrop Grumman Benefit Plans Administrative Committee (the "Plan Administrator"), Northrop Grumman Corporation ("Northrop Grumman"), and Does 1 through 10, inclusive (collectively "Defendants").

## NATURE OF THE ACTION

2. This class action seeks relief authorized under the Employee Retirement Income Security Act of 1974 ("ERISA") on behalf of a class of all enrollees the Plan, formerly known as the TRW Salaried Pension Plan (the "TRW Plan"), who were previously enrolled in the ESL Retirement Fund (the "ESL Plan").

## JURISDICTION AND VENUE

3. ***Subject matter jurisdiction.*** This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. § 1132 and 28 U.S.C. § 1131.

4. ***Personal jurisdiction.*** ERISA provides for nationwide service of process. 29 U.S.C. § 1132(e)(2). All Defendants are either residents of the United States or subject to service in the United States. This Court therefore has personal jurisdiction over them.

5. ***Venue.*** Venue is proper in this District pursuant to 29 U.S.C. § 1132(e)(2), because much of the conduct that is the subject of this lawsuit occurred within this District, and all Defendants conduct business within this District, either directly or through wholly owned and controlled subsidiaries.

## THE PARTIES

**A.   Plaintiffs**

6. Plaintiff brings this action on behalf of a class of all participants in the Plan whose pension benefits were reduced due to a distribution of the ESL Plan.

7. Plaintiff John Baleja is a Plan participant within the meaning of ERISA, 29 U.S.C. § 1002(7). He was originally a participant in the ESL Plan and then the TRW

Plan, which later became the Plan.

**B.     Defendants**

8.     On information and belief, Defendant Northrop Grumman Space & Mission Systems Corp. Salaried Pension Plan is an ERISA-governed retirement benefit plan. According to the Plan's Form 5500, the Plan's address is 2980 Fairview Park Drive, Falls Church, VA 22042-4511, the headquarters of Northrop Grumman Corporation.

9.     On information and belief, Defendant Northrop Grumman Benefit Plans Administrative Committee is the Plan's administrator and named fiduciary. Its principal place of business is 2980 Fairview Park Drive, Falls Church, VA 22042-4511, the headquarters of Northrop Grumman Corporation.

10.     On information and belief, Defendant Northrop Grumman Corporation, a global security company, is a Delaware corporation. According to Northrop Grumman's Form 10-K, the Corporation's principal place of business is 2980 Fairview Park Drive, Falls Church, VA 22042-4511.

11.     Does 1 through 10, inclusive, are persons unknown to Plaintiff, including but not limited to persons serving as Trustees, who were fiduciaries or parties in interest to the Plan during the Class Period.

**RELEVANT FACTS**

**A.     Plaintiff Accrues Benefits.**

12.     Plaintiff began working for ESL, a subsidiary of TRW, on March 22, 1982. As an employee of the ESL division of TRW, Plaintiff was eligible to join the ESL Plan and became a participant.

13.     In 1984, TRW terminated the ESL Plan and replaced it with the TRW Plan. Plaintiff became a participant in the TRW Plan. As a member of the TRW Plan, Plaintiff was guaranteed pension benefits at age 65.

14.     In August 1985, Plaintiff received a check for $4,078.14 from the ESL Plan. That check was a distribution from the ESL Plan (the "Distribution") at the time

of its termination. The check was delivered without any instructions for its use. Plaintiff opened an IRA and deposited the funds. On information and believe, all employees of the ESL division of TRW similarly received a distribution from the ESL Plan at the time that the ESL Plan was terminated.

15. Plaintiff ended his employment with TRW on August 19, 1995. Plaintiff was at no time advised that there would or could be any offset to his retirement benefits under the Plan as a result of his prior participation in the ESL Plan or as a result of the Distribution.

16. On December 11, 2002, TRW was acquired by Northrop Grumman, which assumed sponsorship of the TRW Plan. Although the TRW Plan's provisions were not altered, its name was changed to the Northrop Grumman Space & Mission Systems Corp. Salaried Pension Plan.

**B.    Plaintiff Requests His Benefits Under The Plan.**

17. In December 2015, Plaintiff called the Northrop Grumman Benefits Center (the "Benefits Center") to inquire about the correct procedure for redeeming his benefits. In response, he received a letter on December 21, 2015 stating, "During your employment with Northrop Grumman, you participated in the Pension Plan and met its vesting requirements. As a result, you've earned a monthly benefit of $1,066.80 under the Single Life Annuity Form of payment."

18. Plaintiff subsequently received a Pension Calculation Statement from the Benefit Center dated January 25, 2016. On page 2 of this document under "Your Pension Calculation Details," a line stated "Part A Normal Retirement Benefit $1066.80." Immediately underneath this line, however, was another line that stated "Part A Benefit at Retirement Date $595.46." This 44.2% reduction in Plaintiff's monthly pension benefit was not accompanied by an explanation, was not previously disclosed to plaintiff, and would have (if disclosed) materially affected Plaintiff's decision whether to participate in the Plan.

**C.     Plaintiff Contests The Reduction Of Benefits.**

19.     Plaintiff sought an explanation for this $471.30 per month ($5,656.08 per annum) reduction in accrued benefits. He called the Benefits Center several times, beginning on March 29, 2016.

20.     On April 5, 2016, Plaintiff was told that the $4,078.14 payout he had received from the ESL Plan was actually a $3,927.25 distribution plus interest. This amount allegedly acted as an offset to his current pension benefit. He was told that that payout was calculated to be worth $50,273.68 after potential investment and that this sum could be used to purchase a single life annuity that would replace the $471.34 a month pension benefit reduction (the "ESL Offset").

21.     One staff member told Plaintiff that he was lucky that he had only worked at ESL for a short time because she had to tell two other former employees that they would not receive any pension benefit. On information and belief, every other ESL employee was similarly subjected to an ESL Offset that artificially appreciated their prior distribution from the former ESL Plan.

22.     Plaintiff sent a Claim Initiation Form to Northrop Grumman on June 2, 2016. In it, he contested the reduction, noting that (1) the ESL Offset was not described in any prior documentation provided to him, and (2) the ESL Offset does not correctly reflect the investment of the Distribution. Specifically, Plaintiff noted that the original ESL and TRW Plans he had received included no allusion to an offset. Moreover, he noted that his Distribution, which he had invested on August 12, 1984, had grown to only $13,725.89, not to the calculated $50,273.68, and that, even had it appreciated as suggested, he would not be able to purchase an annuity worth $471.34 per month.

23.     In a letter dated September 1, 2016 (the "Claim Denial"), Northrop Grumman denied Plaintiff's claim. It alleged that the Plan's terms required the ESL Offset and that, as a fiduciary under ERISA, it could therefore not pay Plaintiff his full benefits.

24.     First, Northrop Grumman argued that Plaintiff had been notified of the ESL Offset. Northrop Grumman attached a portion of a document entitled the "ESL Pamphlet," which it claimed was the TRW's Summary Plan Description as of January 1, 1985, as Exhibit A to the Claim Denial. The ESL Pamphlet states that

> [s]ubject to the service starting dates noted under the Service section of this booklet, the plan will credit employment by ESL or RGM as service for both benefit and vesting purposes. For this reason, the monthly pension benefit which could be provided to you at age 65 by the terminated plan's account balance will offset (serve to reduce) the amount produced by the plan's normal retirement benefit formula.

The ESL Pamphlet does not provide any formula for determining "the monthly pension benefit which could be provided to you at age 65 by the terminated plan's account balance," does not state the interest rate intended to be used by the Plan, and does not illustrate or explain in simple terms the possible implications of this highly material term.

25.     Second, Northrop Grumman purported to explain the ESL Offset calculation, stating:

> First, the Plan increased your $3,927.25 ESL Plan distribution with 8.5% interest per year from January 1, 1985 to April 1, 2016 (the date your benefit payments commenced), totaling $50,273.68 (equaling the present value of your ESL Fund distribution). Next, the Plan converted the $50,273.68 ESL Plan distribution to an equivalent single life annuity using the Plan's actuarial equivalence basis of 8.5% interest and the GAM83U mortality table, totaling $471.26 ESL Offset. Finally, the Plan offset your $1,066.80 gross monthly Part A Benefit under the Plan by the $471.26 ESL Offset, totaling $595.54 Part A Benefit.

26.     According to Northrop Grumman, the 8.5% interest rate was first contained in the 1989 TRW Plan, and the use of the GAM83U mortality table was first contained in the 2014 Northrop Grumman Plan. On information and belief, no prior plan provisions contained these provisions, including but not limited to the plan provisions applicable to Plaintiff and the rest of the class. Further, on information and belief, the relevant summary plan descriptions did not include either the 8.5% appreciation rate or the use of the GAM83U mortality table, and the Claim Denial did

5
CLASS ACTION COMPLAINT

not allege the existence of any summary plan description that included either the 8.5% appreciation rate or the GAM83U mortality table.

27. The Claim Denial also outlined the procedures by which Plaintiff could appeal the benefits decision within 65 days of the receipt of the Claim Denial.

28. On September 9, 2016, Plaintiff appealed the benefits decision. In a letter dated November 11, 2016, Northrop Grumman denied his appeal.

## CLASS ACTION ALLEGATIONS

29. To the extent appropriate, Plaintiff brings this action as a class action pursuant to Rules 23(a), (b)(1), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure on behalf of Plaintiff and the following class of persons similarly situated (the "Class"):

> All Persons, excluding Defendants, who were participants in or beneficiaries of the Plan at any time from December 31, 1984 up to and including the date of judgment in this action (the "Class Period") whose pension benefits were reduced due to the ESL Offset (the "Class").

30. The members of the Class, which is estimated to number in the thousands, are so numerous that joinder of all members is impracticable. On information and belief, when the ESL Plan was terminated in 1984, there were several thousand employees in the ESL Division of TRW, all of whom are potential Class members.

31. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class, including:

    a. Whether the Plan failed to pay benefits due under the terms of the Plan.

    b. Whether the Plan failed to disclose the ESL Offset.

    c. Whether the Plan failed to disclose the ESL Offset in a manner calculated to be understood by the average participant.

    d. Whether the Plan failed to limit or eliminate technical jargon and of long, complex sentences with respect to disclosure of the ESL Offset.

  e. Whether the Plan failed to use clarifying examples and illustrations with respect to disclosure of the ESL Offset.

  f. Whether the Plan minimized, rendered obscure, or otherwise make the ESL Offset appear unimportant.

  g. Whether the Plan failed to timely disclose the ESL Offset.

32. Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff and the other members of the Class each were deprived of benefits arising out of Defendants' violation of federal law as complained of herein.

33. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained competent counsel experienced in class actions and ERISA litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

34. Class action status is warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the actions, or substantially impair or impede their ability to protect their interests.

35. Class action status is also warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants.

36. Class action status is warranted under Rule 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class and Subclass as a whole.

37. Class action status is warranted under Rule 23(b)(3) because a class action would be superior to individual actions and common questions of law and fact predominate over individual questions.

## FIRST CLAIM FOR RELIEF

**(Plaintiff, Individually And On Behalf Of The Class, Against All Defendants)**

**(For Relief Pursuant To 29 U.S.C. § 1132(a)(1)(B))**

38. All prior allegations in this Complaint are incorporated by reference.

39. ERISA authorizes a civil action by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

40. Plaintiff has met all prerequisites for and properly complied with all plan procedures for requesting distribution of his benefits.

41. Nevertheless, the Plan failed to pay Plaintiff's benefits by arbitrarily and capriciously, and unreasonably, applying an offset purportedly (but not actually) authorized under the terms of the Plan. The Plan's terms either did not allow an offset to Plaintiff's benefits at all or did not allow an offset to the extent applied by the Plan here. Plaintiff is informed and believes that other Class members have been subjected to the same offset applied to him.

42. As a result of their arbitrary and capricious and unreasonable interpretation of the Plan, Defendants failed to pay Plaintiff and the Class benefits due under the Plan's terms. Pursuant to 29 U.S.C. § 1132(a)(1)(B), Plaintiff and the Class seek the immediate payment of those withheld benefits.

## SECOND CLAIM FOR RELIEF

**(Plaintiff, Individually And On Behalf Of The Class, Against All Defendants)**

**(For Relief Pursuant To 29 U.S.C. § 1132(a)(3))**

43. All prior allegations in this Complaint are incorporated by reference.

44. ERISA authorizes a civil action by a participant or beneficiary to obtain "appropriate equitable relief." 29 U.S.C. § 1132(a)(3). The Supreme Court has held that under ERISA a district court may award "appropriate equitable relief" in the form of the equitable remedies of reformation, estoppel, and surcharge. *CIGNA Corp. v.*

*Amara*, 563 U.S. 421, 422-23 (2011). Reformation is "[t]he power to reform contracts [and] is a traditional power of an equity court and is used to prevent fraud." *Id.* at 422. "Equitable estoppel operates to place the person entitled to its benefit in the same position he would have been in had the representations been true." *Id*. at 441 (internal quotations omitted). And the surcharge remedy gives the court the power to "provide monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment." *Id*. at 422.

45. To protect participants and beneficiaries from unwelcome surprises at retirement, ERISA requires plans to disclose material terms in a plain language document called a summary plan description. 29 U.S.C. § 1022 ("The summary plan description . . . shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan."); 29 C.F.R. § 2520.102-2 (implementing regulations). The Department of Labor's implementing regulations explain that, in drafting the summary plan description, the plan must take into account "such factors as the level of comprehension and education of typical participants in the plan and the complexity of the terms of the plan." 29 C.F.R. § 2520.102-2(a). The regulations further state: "Consideration of these factors will usually require the limitation or elimination of technical jargon and of long, complex sentences, the use of clarifying examples and illustrations, the use of clear cross references and a table of contents." *Id.* And the regulations further mandate that "[a]ny description of exception, limitations, reductions, and other restrictions of plan benefits shall not be minimized, rendered obscure or otherwise made to appear unimportant." 29 C.F.R. § 2520.102-2(b).

46. ERISA also requires plans to disclose any material modifications to the plan. 29 U.S.C. § 1022 ("A summary of any material modification in the terms of the plan and any change in the information required under subsection (b) shall be written in a manner calculated to be understood by the average plan participant and shall be

furnished in accordance with section 1024(b)(1) of this title."); 29 C.F.R. § 2520.104b-3 (implementing regulations). A plan must "furnish" the summary plan description to its participants and beneficiaries before the later of 90 days after the employee becomes a participant or 120 days after the plan becomes effective. 29 U.S.C. § 1022; 29 C.F.R. § 2520.104b-2(a). It must also furnish an updated summary plan description.

47. The ESL Offset is a material term of the Plan because it has the possibility of reducing a participant's or a beneficiary's benefits significantly. For example, Plaintiff's benefits were, according to the Plan, reduced as a result of the ESL Offset by roughly half, and Plaintiff was told that other participants' benefits had been reduced as a result of the ESL Offset to zero. As such, the ESL Offset needed to be properly disclosed in the Plan's summary plan description. *See* 29 U.S.C. § 1022; 29 C.F.R. § 2520.102-2. And not later than 210 days after the close of the plan year in which the modification was adopted, it also needed to be properly disclosed in the Plan's summary description of material modifications. *See* 29 C.F.R. § 2520.104b-3. The ESL Offset was not so disclosed.

48. On information and belief, the Plan failed to comply with ERISA's disclosure requirements owed to Plaintiff and the Class in a number of ways, including the following:

    a. Failing to disclose the ESL Offset.

    b. Failing to disclose the ESL Offset in a manner calculated to be understood by the average participant.

    c. Failing to limit or eliminate technical jargon and of long, complex sentences with respect to disclosure of the ESL Offset.

    d. Failing to use clarifying examples and illustrations with respect to disclosure of the ESL Offset.

    e. Minimizing, rendering obscure, or otherwise making the ESL Offset appear unimportant.

    f. Failing to timely disclose the ESL Offset.

49. As a result of these failures, the Plan unlawfully led Plaintiff and the Class to believe that the ESL Offset would be insignificant or, at a minimum, not coextensive with the one at issue here.

50. In failing to provide notice in the form of a summary plan description, a summary description of material modifications, or to provide either document in the statutory time limit, Defendants also breached their statutory duties under ERISA as set forth in its implementing regulations including 29 C.F.R. §§ 2520.102-2, 2520.102-3, 2520.104b-2(a), and 2520.104b-3.

51. Accordingly, Plaintiff and the Class seek orders pursuant to 29 U.S.C. § 1132(a)(3), reforming the Plan to remove the terms that constitute the ESL Offset, estopping Defendants from reliance upon the terms that constitute the ESL Offset, and surcharging Defendants for their breaches of duty.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class pray for relief as follows:

1. Benefits due under the terms of the plan;
2. An order reforming the Plan to remove the terms that constitute the ESL Offset;
3. An order estopping Defendants from reliance upon the terms that constitute the ESL Offset;
4. An order surcharging Defendants for their breaches of duty;
5. Attorney's fees pursuant to 29 U.S.C. § 1132(g);
6. Interest; and
7. Such other relief as the Court deems just and proper.

| | |
|---|---|
| Dated: February 8, 2017 | **STRIS & MAHER LLP** |
| | /s/ Victor O'Connell |
| | Peter K. Stris (SBN 216226) |
| | Brendan S. Maher (SBN 217043) |
| | Victor O'Connell (SBN 288094) |
| | |
| | 725 South Figueroa Street, Suite 1830 |
| | Los Angeles, CA 90017 |
| | Telephone: (213) 995-6800 |
| | Facsimile: (213) 261-0299 |
| | victor.oconnell@strismaher.com |
| | |
| | /s/ Shaun P. Martin |
| | Shaun P. Martin (SBN 158480) |
| | |
| | 5998 Alcala Park |
| | San Diego, CA 92110 |
| | Telephone: (619) 260-2347 |
| | Facsimile: (619) 260-7933 |
| | |
| | *Attorneys for Plaintiffs* JOHN BALEJA, on behalf of himself and all others similarly situated |