**STRIS & MAHER LLP**
PETER K. STRIS (SBN 216226)
peter.stris@strismaher.com
BRENDAN S. MAHER (SBN 217043)
brendan.maher@strismaher.com
VICTOR O'CONNELL (SBN 288094)
victor.oconnell@strismaher.com
725 South Figueroa Street, Suite 1830
Los Angeles, CA 90017
T: (213) 995-6800 | F: (213) 261-0299

SHAUN P. MARTIN (SBN 158480)
smartin@sandiego.edu
University of San Diego School of Law
5998 Alcala Park, Warren Hall
San Diego, CA 92110
T: (619) 260-2347 | F: (619) 260-7933

Attorneys for Plaintiff
JOHN BALEJA, on behalf of himself
and all other similarly situated

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

| | |
|---|---|
| JOHN BALEJA, on behalf of himself and all others similarly situated, | Case No. 5:17-CV-00235-JGB-SP |
| Plaintiff, | **SECOND AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF ERISA** |
| v. | |
| NORTHROP GRUMMAN SPACE & MISSIONS SYSTEMS CORP. SALARIED PENSION PLAN; NORTHROP GRUMMAN BENEFIT PLANS ADMINISTRATIVE COMMITTEE; NORTHROP GRUMMAN CORPORATION; and DOES 1 through 10, inclusive, | |
| Defendants. | |

1. Plaintiff John Baleja, individually and as a representative of a class of similarly situated persons, brings this action against the Northrop Grumman Space & Mission Systems Corp. Salaried Pension Plan, Northrop Grumman Benefit Plans Administrative Committee, Northrop Grumman Corporation ("Northrop Grumman"), and Does 1 through 10, inclusive (collectively "Defendants").

# INTRODUCTION

2. Defendants confiscated the pensions of Plaintiff and thousands of his fellow employees (together, the "Retirees").

3. The Retirees were employees of a TRW, Inc. subsidiary in the 1980s and 1990s, when TRW was a booming aerospace and defense business. They became participants in the pension plan formerly known as the TRW Salaried Pension Plan ("TRW Plan" or "Plan").

4. Defendants are the present-day incarnation of the TRW Plan, its sponsor, and its fiduciaries.

5. The TRW Plan is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"). ERISA is a landmark federal law that protects the contractually defined benefits promised to employees. ERISA forbids pension plans from misleading their participants and beneficiaries. *See, e.g.*, *CIGNA Corp. v. Amara*, 563 U.S. 421, 440 (2011) (equitable relief available under ERISA to remedy "false or misleading information" provided by plan); *Varity Corp. v. Howe*, 516 U.S. 489, 506 (1996) (misrepresentations are breach of fiduciary duty under ERISA). And it prohibits decreasing benefits already accrued to participants through amendment. *See* 29 U.S.C. § 1054(g); *see also* 29 U.S.C. § 1054(h) (barring reductions in future benefit accruals).

6. The Retirees accrued the benefits at issue decades ago. All of them were originally participants in the ESL Incorporated Retirement Fund ("ESL Plan"). On December 31, 1984, Defendants terminated the ESL Plan. Plaintiff, like other ESL employees, received a small distribution from the ESL Plan. On January 1, 1985,

Defendants added the Retirees to the TRW Plan. Throughout 1984 and 1985, the Retirees were assured that they would be immediately added to the TRW Plan on January 1, 1985. And for some time, no one mentioned that their future benefits would be offset by 1985 distribution from the ESL Plan, nor were any specifics of any offset mentioned.

7. In 1986, Defendants amended the TRW Plan. The 1986 Plan was the first time there was any mention of any potential offset to the Retirees' pensions. It specified that the offset would equal exactly "the amount listed opposite the Participant's name in Appendix J." But there was never any offset listed in Appendix J for any member of the former ESL Plan; not for Plaintiff, and not for any other Retiree (or, in the alternative, an Appendix J existed, but Defendants applied an offset greater than that listed in Appendix J).

8. For a decade, any offset applied or estimated under the 1986 Plan was modest, if indeed the plan administrator applied any offset at all. Then, in 1996 and after most ESL employees had been laid off, Defendants rewrote the TRW Plan to inflate this offset and retroactively eviscerate the Retirees' pensions.

9. For the first time, the 1996 Plan enacted a specific and remarkably unfair calculation for the Retirees. It worked as follows:

    a. First, the 1985 distribution would be appreciated at a fixed rate of 8.5% per year until age 65. For Plaintiff, this assumed the market in 1985 would have allowed him to lock in an 8.5% interest for 30+ years until he reached retirement age in 2016. He could not, in fact, do so, nor could any other Retiree.

    b. Next, the appreciated distribution would be converted to a hypothetical annuity purchased in 2016 using the same imaginary 8.5% interest rate, thereby assuming Plaintiff could achieve such a rate today.

10. In their zeal to fleece their former employees, Defendants backtracked on the calculations they had applied for other participants prior to 1996. As a result, the Retirees' pensions were devastated.

11. Defendants have tried to justify this offset on the grounds that the TRW Plan provided the Retirees with service credit. But in many circumstances the offset meant the Retirees continued working for *no pension*. Plaintiff was "lucky": because he had only been an employee for 2 years before the plan change, the pension he received after his 11 additional years of service was only reduced by 44%. Put simply, the Retirees were *penalized*, not credited, for the prior work they performed while covered by the ESL Plan.

12. The offset is invalid on three alternative grounds:

    a. **Defective Notice of the 1986 Offset.** Defendants told the Retirees they would become plan participants without also telling them that their pensions would be substantially reduced. For more than a decade, the Retirees were kept in the dark about its size and nature. Defendants concealed these facts because no one would have voluntarily continued to serve TRW on the terms it intended. This misconduct entitles the Retirees to equitable relief.

    b. **Cutbacks to the 1986 Plan.** Defendants changed their mind about the benefits that the Retirees should receive over ten years after the fact. They rewrote the plan in 1996 to provide for a much higher offset than the one they had routinely applied in the past. This was a cutback prohibited by ERISA.

    c. **Cutbacks to the 1981 Plan.** When Defendants first added ESL employees to the TRW Plan on January 1, 1985, the plan did not provide for any offset to the Retirees' benefits. When TRW later sought to amend the plan in 1986, it impermissibly cut back their benefits.

## NATURE OF THE ACTION

13. This class action seeks relief authorized under ERISA on behalf of a class of all participants of the plan formerly known as the TRW Plan who were previously participants in the ESL Plan and whose pensions were unlawfully reduced by an offset applied by Defendants.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. § 1132 and 28 U.S.C. § 1131.

15. ERISA provides for nationwide service of process. 29 U.S.C. § 1132(e)(2). All Defendants are either residents of or subject to service in the United States. Accordingly, this Court has personal jurisdiction over them.

16. Venue is proper in this District pursuant to 29 U.S.C. § 1132(e)(2), because much of the conduct that is the subject of this lawsuit occurred within this District, and all Defendants conduct business within this District, either directly or through wholly owned and controlled subsidiaries.

## THE PARTIES

### A. Plaintiff

17. Plaintiff brings this action on behalf of a class of all participants in the Plan whose pension benefits were reduced due to a distribution of the ESL Plan.

18. Plaintiff John Baleja is a participant within the meaning of ERISA, 29 U.S.C. § 1002(7). He is a participant in the TRW Plan.

### B. Defendants

19. Defendant Northrop Grumman Space & Mission Systems Corp. Salaried Pension Plan is an ERISA-governed retirement benefit plan. The Plan's address is 2980 Fairview Park Drive, Falls Church, Virginia 22042.

20. Defendant Northrop Grumman Benefit Plans Administrative Committee is the Plan's administrator and named fiduciary. Its principal place of business is 2980 Fairview Park Drive, Falls Church, Virginia 22042.

21.   Defendant Northrop Grumman Corporation, a global security company, is a Delaware corporation. Its principal place of business is 2980 Fairview Park Drive, Falls Church, Virginia 22042.

22.   DOES 1 through 10, inclusive, are persons unknown to Plaintiff, including but not limited to persons serving as trustees, who were fiduciaries or parties in interest to the TRW Plan during the Class Period.

## RELEVANT FACTS

**A.   Evolution Of The TRW Plan And The ESL Offset**

*A Growing TRW Consolidates The Pension Plans*

*Of Its Many Subsidiaries Under One TRW Pension Plan.*

23.   In the 1980s, booming aerospace business TRW, Inc. had numerous subdivisions and subsidiaries throughout America. To provide pension benefits for its many employees, including the employees of most of its subsidiaries, TRW sponsored a defined benefit pension plan known as the TRW Salaried Pension Plan.

24.   Originally established in 1953, the TRW Plan grew explosively as TRW added and acquired additional subdivisions and subsidiaries. By 1981, the Plan was promising pension benefits to employees of over 60 specifically identified subdivisions or subsidiaries who had been consolidated under the TRW Plan umbrella.

25.   This made good economic sense. Administration of many individual pension plans would have been expensive, and TRW was able to leverage economies of scale by consolidating its pension delivery to one centralized plan. It accomplished this by engaging in a pattern and practice of terminating many subsidiary plans and promising the employees of those subsidiaries that they would instead immediately receive benefits under the terms of the existing TRW Plan.

26.   As a defined benefit plan, the TRW Plan calculated the benefits due to its participants using a formula based on average earnings for certain years of work multiplied by the employee's total years of service. As such, and as indicated by the

5

1981 Plan, to facilitate the transition of subsidiary employees to the TRW Plan, TRW promised some of them service credit for the years they had worked under a subsidiary plan. In certain other instances, prior service was disregarded. But before 1985, in no instance had any employee had their benefits subject to an offset based on a distribution from a prior plan.

27. This changed with ESL Incorporated.

### *TRW Terminates The Separate Plan Of Subsidiary ESL Incorporated And Enrolls ESL's Employees In The TRW Plan*

28. ESL was founded in 1964 and acquired by TRW in 1978. At the time it was acquired, ESL had several thousand employees and its own pension plan called the ESL Incorporated Retirement Fund. The ESL Plan was a defined contribution pension plan. That means the plan would regularly make contributions to its participants' retirement accounts and that money would be invested until withdrawn by the participant at retirement age.

29. As indicated in the 1981 Plan, ESL was part of the Defense Systems Group within TRW. But because, and only because, it had its own existing pension plan, ESL was on this basis excluded from the coverage extended to the Defense Systems Group, which was described in Schedule 2 to the 1981 Plan.

30. Prior to December 31, 1984, TRW decided to terminate the ESL Plan and bring ESL employees under the umbrella of the TRW Plan. Defendants terminated the ESL Plan on December 31, 1984.

31. During 1984, Defendants told the Retirees that on January 1, 1985, the Retirees would become members of the 1981 TRW Plan. During 1985, Defendants told the Retirees that they became members of the 1981 TRW Plan on January 1, 1985. In the 1986 Plan, Defendants state that the Retirees became members of the 1981 TRW Plan on January 1, 1985.

32. The Retirees became members of the 1981 TRW Plan on January 1, 1985.

6
SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:17-CV-00235-JGB-SP

33. Defendants thereafter amended the 1981 TRW Plan and, in 1986, created the 1986 Plan.

34. TRW distributed funds from the ESL Plan to the Retirees via checks sent in or around August 1985.

### *TRW Makes (Mis)representations To ESL Employees About The Change To Their Pension Plan*

35. As would any company making major employee compensation changes, TRW made a number of representations to ESL employees during this transition. Prior to 1985, employees of ESL were told that the ESL Plan would be terminated on December 31, 1984, and that they would become participants in the TRW Plan on January 1, 1985. In those communications, employees were not told that their benefits under the TRW Plan would be subject to any offset.

36. Before 1986, Defendants did not inform the Retirees of any offset amount, and certainly did not state the interest rate or explain the methodology that would be used to calculate an offset. This is not surprising, since until 1986, the TRW Plan—i.e., the 1981 Plan—did not establish an offset at all.

37. Finally, in 1986, the 1986 Plan provided that the Retirees' benefits would be offset by precisely the amount provided next to each Retiree's name in Appendix J. But no amount (i.e., no offset at all) was listed next to any name of any Retiree. (In the alternative, an Appendix J listed an amount, but it was an offset lower than the one Defendants applied to Retirees like Plaintiff.) Thus, even an examination of the Plan would not reveal an offset amount, much less an interest rate, an example, or a description of how this offset would apply.

38. There was accordingly no offset in the 1981 Plan, and no offset for any of the Retirees in the 1986 Plan either.

### *TRW Rewrites The Offset In 1996 In A Cynical Bid*
### *To Devastate The Pensions Of Former ESL Plan Participants*

39. From 1986 to 1996, on information and belief, Defendants nonetheless applied an offset—albeit a relatively modest one—to the actual and expected pensions of the Retirees, despite the fact that the Retirees were not given the requisite notice of this offset nor was it contained in the terms of the TRW Plan. But at least this offset, while illegal, was based on actual market factors.

40. But in 1996, Defendants rewrote the 1986 Plan to deliberately inflate (retroactively) the purported offset. In contrast to the 1986 Plan, the 1996 Plan provided—for the *first time*—that a participant's ESL Plan distribution would be appreciated at 8.5% per year until the participant's retirement age and then converted to a supposed "Actuarial Equivalent," meaning a hypothetical annuity value based on an 8.5% per year return and the 1971 Group Annuity Mortality Table.

41. Prior to the 1996 Plan (and its creation of an 8.5% offset rate), Defendants applied an offset purportedly from the 1986 Plan, an offset that was based on market rates (not an artificial 8.5% rate) and that created a lesser offset than the 8.5% rate under the 1996 Plan.

42. Plaintiff's own experience confirms that Defendants did not apply the confiscatory across-the-board 8.5% rate before 1996. Plaintiff was told in 1994 that his pension would be approximately $1,000 per month at retirement, showing that before 1996 TRW was applying a much smaller offset than the one it later tried to apply based on the 1996 offset. And when Defendants later applied and explained the much larger offset to his pension benefits, Defendants relied *solely* on the plan language added in 1996, and did not mention the 1986 Plan language at all. The reason is simple: Defendants hoped to offset the much larger amount provided by the 1996 offset and avoid detection of the fact that they had rewritten the offset provided in the 1986 Plan.

43. Defendants have done the same thing in this Court. Defendants repeatedly cite the terms of the 1996 Plan, despite the fact that this plan is not the operative plan for the Retirees (like Plaintiff) who left TRW long before the adoption of the 1996 Plan.

44. In 2002, TRW was acquired by Northrop Grumman, which assumed sponsorship of the TRW Plan and renamed it the Northrop Grumman Space & Mission Systems Corp. Salaried Pension Plan. For convenience, Plaintiff will continue to refer to this plan as the TRW Plan.

**B.     Defendants' Application Of The Offset To Plaintiff**

45. Plaintiff began working for ESL in March 1982. Under the terms of the ESL Plan, he was entitled to participate in the ESL Plan following his first year of service, and did so.

46. As described above, on December 31, 1984, TRW terminated the ESL Plan. Then, on January 1, 1985, it enrolled Plaintiff in the TRW Plan.

47. In August 1985, Plaintiff received a check for $4,078.14 from the ESL Plan. This reflected benefits he had earned after his first 21 months of service. He opened an IRA and deposited the funds.

48. In August 1994, Plaintiff received a letter from ESL informing him that he was about to be laid off. The layoff letter did not describe his pension benefits. So the next month Plaintiff met with Laura C. Kim, a Benefits Administrator in TRW Human Resources, to inquire about his pension. Ms. Kim told Plaintiff that he would receive approximately $1,000 per month upon retirement, which he wrote on her business card and kept. Plaintiff ended his employment with TRW on August 19, 1995. At the conclusion of his tenure, he had provided 13.5 years of service to the company.

49. It was not until nearly two decades later that Plaintiff would learn any details about the purported pension offset. As Plaintiff approached age 65, he inquired with Northrop Grumman (now administering the TRW Plan) about withdrawing his

benefits. In response, he was told that he had accrued pension benefits of $1066.80 per month but that those benefits were being reduced to *$595.46* per month. The basis for this reduction, he was told, was an offset based on the distribution he had received in August 1985 from the ESL Plan.

50. Plaintiff was dismayed. How could this purported offset—based on the first 21 months of his 13.5 years of service—reduce his pension benefits by 44%? He went through two rounds of the benefits appeals process in an effort to find out. During that process, he learned several things:

51. First, Plaintiff learned from a Northrop Grumman employee that he was "lucky" he had only worked at ESL for a short time because she had to tell two other former employees that they would not receive any pension benefit at all.

52. Second, Plaintiff learned that plan administrator had applied the following formula to calculate the offset applicable to him:

   a. "First, the Plan increased your $3,927.25 ESL Plan distribution with 8.5% interest per year from January 1, 1985 to April 1, 2016 . . . totaling $50,273.68 . . . ."

   b. "Next, the Plan converted the $50,273.68 ESL Plan distribution to an equivalent single life annuity using the Plan's actuarial equivalence basis of 8.5% interest and the GAM83U mortality table, totaling $471.26 ESL Offset."

   c. "Finally, the Plan offset your $1,066.80 gross monthly Part A Benefit under the Plan by the $471.26 ESL Offset, totaling $595.54 Part A Benefit."

53. Third, Plaintiff learned that this formula had been drawn from the 1996 TRW Plan. This was clear from the fact that the plan administrator described the offset as derived from the Plan's "explicit" and "expressly stated" terms, which the plan administrator claimed "contain[] clear language regarding the application of the ESL offset." Tellingly, the plan administrator did not acknowledge that this supposedly "clear," "explicit," and "express" language was added to the Plan after

10

1 Plaintiff's employment ended and more than a decade following distribution of the
2 ESL Plan. The plan administrator did not mention or rely in any way on language
3 from the 1986 Plan in justifying the offset calculation.

4     54. Plaintiff pleaded with Defendants to reconsider applying the offset to
5 him. Among other things, he explained that his distribution from the ESL Plan, which
6 he had prudently invested on August 12, 1984 in a segregated account, had grown to
7 only $13,725.89 when he reached age 65, and that it would be impossible for him to
8 purchase an annuity to account for the offset. But Defendants refused to budge.

9     55. The appeal process ended when Plaintiff received a final determination
10 confirming that Defendants would enforce the offset. Plaintiff secured counsel to file
11 this suit.

## CLASS ACTION ALLEGATIONS

13     56. To the extent appropriate, Plaintiff brings this action as a class action
14 pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and/or (b)(3) on
15 behalf of Plaintiff and the following class of persons similarly situated (the "Class"):

> All Persons, excluding Defendants, whose accrued pension benefits at any time from December 31, 1984 up to and including the date of class certification in this action (the "Class Period") were reduced by Defendants due to an offset (the "Class").

21     57. The members of the Class, which is estimated to number in the
22 thousands, are so numerous that joinder of all members is impracticable. On
23 information and belief, when the ESL Plan was terminated in 1984, there were several
24 thousand ESL employees all of whom are potential Class members.

58. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class, including but not limited to:

    a. Whether any purported offset is invalid because the 1986 Plan must be reformed to exclude, or because Defendants must be estopped from enforcing, an offset.

    b. Whether the offset based on the 1996 Plan is greater than that justified by the 1986 Plan, as that plan was interpreted from 1986 to 1996, in violation of ERISA's anti-cutback rule.

    c. Whether the class members became participants in the 1981 Plan.

59. Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff and the other members of the Class each were deprived of benefits arising out of Defendants' violation of federal law as complained of herein.

60. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained competent counsel experienced in class actions and ERISA litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

61. Class action status is warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the actions, or substantially impair or impede their ability to protect their interests.

62. Class action status is also warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants.

63. Class action status is warranted under Rule 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby

making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

64. Class action status is warranted under Rule 23(b)(3) because a class action would be superior to individual actions and common questions of law and fact predominate over individual questions.

## FIRST CLAIM FOR RELIEF

**(Plaintiff, Individually And On Behalf Of The Class, Against All Defendants)**

(For Equitable Relief – 1986 Plan)

65. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

66. This claim relies exclusively on the 1986 Plan, and does not rely at all on the 1981 Plan.

67. Under the equitable theory of reformation, a plan may be reformed when one party engages in inequitable conduct that misleads another. Here reformation of the 1986 Plan, or other appropriate equitable relief, to excise the 1986 offset in whole or in part is warranted based on Defendants' inequitable and misleading conduct as follows:

   a. The TRW Plan promised Plaintiff and the Class that they would receive pension benefits under the TRW Plan upon termination of the ESL Plan, but the TRW Plan initially did not provide any indication that those benefits would be subject to an offset.

   b. According to Defendants, the TRW Plan at some later point told Plaintiff and the Class that their benefits would be subject to an offset, but that offset was not disclosed in a manner such that Plaintiff and the Class could calculate it.

   c. The TRW Plan, during the relevant period, did not specify that there would be an offset in the governing plan documents, and therefore, participants could not understand the size of the offset or confirm that it, in fact, existed.

      d.      The Plan did not issue benefits statements informing participants of the amount of the offset that would be applied in their specific case.

      e.      The offset in the 1986 Plan failed to state the interest rate or methodology for its calculation. Instead, it directed participants to an Appendix J, and stated that the amount of the offset for each Retiree was contained on this document. However, Plaintiff and the Class were not able to review Appendix J to ascertain any identified offset applicable to them.

68. By obfuscating the size and nature of the purported offset, the foregoing conduct by Defendants misled plan participants into believing they were receiving a valuable pension, when in fact for many of them it was worthless or, at a minimum, substantially less valuable than they had thought. This benefited Defendants because it caused Plaintiff and the Class to continue to work for less money. And it caused detriment to Plaintiff and the Class because they would have negotiated higher wages or sought other employment had they understood the offset.

69. Alternatively, under the equitable theory of estoppel, relief may be awarded upon the plaintiff establishing (1) a material misrepresentation, (2) reasonable and detrimental reliance upon the representation, and (3) extraordinary circumstances.

70. As described above, Defendants made material misrepresentations on which Plaintiff and the Class reasonably relied. And the circumstances are extraordinary here for several reasons. Most notably, Defendants tricked several thousand Retirees into believing that they were being promised pension benefits when for many of them were being promised nothing at all.

71. Because of their misconduct, Defendants are estopped or reformed from applying the offset. Alternatively, at a minimum, they are estopped or reformed from applying more than a nominal offset (one without appreciation). Plaintiff and the Class seek this relief pursuant to 29 U.S.C. § 1132(a)(3) (authorizing a civil action by a participant or beneficiary to obtain "appropriate equitable relief").

## SECOND CLAIM FOR RELIEF

**(Plaintiff, Individually And On Behalf Of The Class, Against All Defendants)**

(For Benefits Payment – 1986 Plan)

72. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

73. This claim relies exclusively on the 1986 Plan, and does not rely at all on the 1981 Plan.

74. Assuming the 1986 Plan properly imposed an offset, the benefits of Plaintiff and the Class under the TRW Plan were impermissibly cutback through the 1996 offset.

75. As explained above, the TRW Plan reduced Plaintiff and the Class's accrued benefits when it adopted the 1996 Plan, which imposed a higher offset than the one the TRW Plan had previously imposed under the 1986 Plan. This violated ERISA's "anti-cutback" rule, which provides, in relevant part, that "[t]he accrued benefit of a participant under a plan may not be decreased by an amendment of the plan." 29 U.S.C. § 1054(g). As such, the 1996 offset is unenforceable.

76. In addition, and independently, Defendants' current reinterpretation of the 1986 offset (advanced in this litigation and based on the 1996 offset) is an unreasonable interpretation of the TRW Plan. The 1986 Plan did not contain an offset for Plaintiff and the Class, as no such offset amount was listed on Appendix J (or, in the alternative, an Appendix J listed an amount, but Defendants applied an offset greater than that listed in Appendix J). Further, at a minimum, Plaintiff and the Class are entitled to receive benefits offset using no greater interest rates and calculated in the same manner as those who retired between 1986 and 1996. The plan cannot reasonably apply one interpretation of the 1986 offset to some participants and a different interpretation of that offset to others.

77. Accordingly, Plaintiff and the Class seek to be paid benefits they are due without application of the inflated 1996 offset to their pensions. *See* 29 U.S.C. § 1132(a)(1)(B) (authorizing a civil action by a participant or beneficiary "to recover

benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan").

### THIRD CLAIM FOR RELIEF

**(Plaintiff, Individually And On Behalf Of The Class, Against All Defendants)**

(For Equitable Relief and Benefits Payment – 1981 Plan)

78. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

79. This claim relies on the terms of the 1981 Plan.

80. Plaintiff and the Class became members of the 1981 Plan on January 1, 1985. Defendants adopted the 1981 Plan on behalf of Plaintiff and the Class on January 1, 1985. In the alternative, on information and belief, Defendants adopted the 1981 Plan on behalf of Plaintiff and the Class shortly thereafter, before the adoption of the 1986 Plan.

81. Defendants told Plaintiff and the Class that the ESL Plan would terminate on December 31, 1984. Defendants simultaneously promised Plaintiff and the Class that they would become members of the then-existing 1981 Plan the very next day, on January 1, 1985. Plaintiff and the Class would not have agreed to continue to work for TRW absent this promise, nor did Defendants intend to have even a single day in which the Retirees were not contemporaneously covered by any retirement plan.

82. Defendants further repeatedly stated during 1985, and thereafter, that Plaintiff and the Class were made members of the then-existing TRW Plan (the 1981 Plan) on January 1, 1985. The contemporaneous coverage of Plaintiff and the Class under the then-existing 1981 Plan was consistent with the treatment by Defendants of other employees of other subsidiaries whose plans Defendants had similarly merged into the 1981 Plan. Further, on information and belief, during 1985, prior to the adoption of the 1986 Plan, Defendants paid former employees of ESL who retired in 1985 and 1986 (but before adoption of the 1986 Plan) under the terms of the 1981 Plan. That was because Plaintiff and the Class were, in fact, made members of the

1981 Plan on January 1, 1985, and were members of that 1981 Plan prior to its amendment and the creation of the 1986 Plan in 1986.

83. ***Equitable Relief.*** As noted above, the equitable theory of reformation allows a plan to be reformed when one party engages in inequitable conduct that misleads another. Here, the TRW Plan promised Plaintiff and the class that they would and did become participants in the Plan on January 1, 1985. That promise did not come with strings in the form of an offset, and when the offset was later allegedly disclosed, it was not sufficiently explained. Plaintiffs were thus misled into believing that they would receive benefits without an offset under the terms of the 1981 Plan.

84. It was inequitable for the TRW Plan to later have sought to apply an offset. Equity requires that the 1981 Plan be reformed to make Plaintiff and the class participants in the 1981 Plan and that any subsequent plan (including but not limited to the 1986 Plan) be similarly reformed to include Plaintiff and the Class without an offset. 29 U.S.C. § 1132(a)(3).

85. ***Benefits Payment.*** Independently, because the 1981 Plan did not provide for any offset, the 1986 offset (and the 1996 offset) constitutes an impermissible cutback of Plaintiff and the Class's accrued benefits under the 1981 Plan and is therefore unenforceable. As such, Plaintiff and the Class are entitled to additional benefits. 29 U.S.C. § 1132(a)(1)(B).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Class pray for relief as follows:

1. Benefits due under the terms of the Plan;

2. An order reforming the Plan to remove (or rewrite) the terms of the offset at issue;

3. An order estopping Defendants from applying the offset at all (or in as great of an amount) to the pensions of Plaintiff and the Class;

4. Attorney's fees pursuant to 29 U.S.C. § 1132(g);

17
SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:17-CV-00235-JGB-SP

5. Interest; and

6. Such other relief as the Court deems just and proper

Dated: November 17, 2017

**STRIS & MAHER LLP**

By: /s/ Victor O'Connell
Peter K. Stris
Brendan S. Maher
Victor O'Connell

725 South Figueroa Street, Suite 1830
Los Angeles, CA 90017
T: (213) 995-6800 | F: (213) 261-0299

By: /s/ Shaun P. Martin
Shaun P. Martin

University of San Diego School of Law
5998 Alcala Park, Warren Hall
San Diego, CA 92110
T: (619) 260-2347 | F: (619) 260-7933

Attorneys for Plaintiff
JOHN BALEJA, on behalf of himself
and all others similarly situated