UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 17-00235 JGB (SPx)** | Date | March 8, 2018 |
|---|---|---|---|
| Title | ***John Baleja v. Northrup Grumman Space and Mission Systems Corp. Salaried Pension Plan, et al.*** | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order DENYING IN PART and GRANTING IN PART Defendants' Motion to Dismiss (Dkt. No. 54) (IN CHAMBERS)

Before the Court is Defendants Northrop Grumman Space and Mission Systems Corporation Salaried Pension Plan, Northrop Grumman Benefit Plans Administrative Committee, and Northrop Grumman Corporation's (collectively, "Defendants") motion to dismiss ("Motion," Dkt. No. 54) Plaintiff John Baleja's ("Plaintiff") second amended complaint ("SAC," Dkt. No. 48). Defendants also filed a memorandum of points and authorities ("Memorandum," Dkt. No. 54-1) and a declaration ("Barlow Decl.," Dkt. No. 54-3) to which they attach eight exhibits.[1] The Court held a hearing on March 5, 2018. After considering oral

---

[1] Defendants attach eight exhibits to Barlow's Declaration in Support of Defendants' Motion: (1) the Appeal Denial Letter sent to Plaintiff (dated November 11, 2016); (2) excerpts from the 1985 TRW Salaried Pension Plan; (3) the Northrop Grumman BC Claim Initiation Form that Plaintiff submitted to the Northrop Grumman Space and Mission Systems Pension Plan; (4) excerpts from the 1989 TRW Salaried Pension Plan, as well as certain Amendments thereto; (5) the 1981 TRA Salaried Pension Plan as well as Amendments thereto; (6) excerpts from the Northrop Grumman Corporation Cash Balance Program, January 1, 2014; (7) Appendix G to the Northrop Grumman Space & Mission Systems Corp. Salaried Pension Plan, January 1, 2014; and (8) excerpt from the transcript of the October 30, 2017 hearing on Defendants' Motion to Dismiss the FAC. First, Plaintiff refers to most, if not all, of the documents Defendants include as exhibits. Second, Plaintiff's claim about ERISA violations is based on the contents of these documents. Thus, they fall within the bounds envisioned by the Ninth Circuit in U.S. v. Ritchie. 342 F.3d 903, 908 (9th Cir. 2003). The Court, however, does not rely on the transcript submitted as exhibit 8.

arguments as well as all papers timely filed in support of, and in opposition to, the Motion, the Court DENIES IN PART and GRANTS IN PART Defendants' Motion.

## I. BACKGROUND

On February 8, 2016, Plaintiff filed a complaint. ("Complaint," Dkt. No. 1.) Defendants filed a motion to dismiss on April 21, 2017. (Dkt. No. 31.) Plaintiff filed a first amended complaint on May 12, 2017. ("FAC," Dkt. No. 32.) On July 3, 2017, Defendants filed a motion to dismiss Plaintiff's FAC. (Dkt. No. 36.) The Court heard argument on October 30, 2017 and granted Defendants' motion to dismiss with leave to amend. ("October Order," Dkt. No. 44.) On November 17, 2017, Plaintiff filed his SAC on behalf of himself and others similarly situated. In his SAC, he alleges three claims against Defendants: (1) Equitable relief (1986 Plan); (2) benefits payment (1986 Plan); and (3) equitable relief and benefits payment (1981 Plan). On December 1, 2017, Defendants filed a motion to dismiss Plaintiff's SAC, but Defendants failed to meet and confer with Plaintiff prior to filing their motion and, thus, the Court struck the motion (Dkt. No. 53). Defendants refiled their Motion on February 1, 2018, after meeting and conferring with opposing counsel. Plaintiff filed an opposition on February 12, 2018 ("Opposition," Dkt. No. 56), and Defendants filed their reply on February 16, 2018 ("Reply," Dkt. No. 57).

## II. FACTUAL ALLEGATIONS

Plaintiff alleges the following facts in his SAC. TRW, Inc. ("TRW") established a benefit pension plan in 1953. (SAC ¶¶ 23-24.) By 1981, the TRW Plan promised pension benefits to employees over 60. (Id. ¶ 24.) TRW was able to consolidate its pension delivery to one centralized plan by terminating many subsidiary plans and promising the employees of those subsidiaries that they would instead immediately receive benefits under the terms of an existing plan. (Id. ¶ 25.) The TRW Plan calculated the benefits using a formula based on average earnings for certain years of work multiplied by the employee's total years of service. (Id. ¶ 26.) TRW promised some of the subsidiary employees service credit for the years they had worked under a subsidiary plan. (Id.)

ESL was established in 1964 and acquired by TRW in 1978. (Id. ¶ 28.) At the time of acquisition, ESL had several thousand employees and its own pension plan, ESL Incorporated Retirement Fund, a defined contribution pension plan. (Id.) ESL was not included in the coverage extended to the Defense Systems Group because it had its own existing pension plan. (Id. ¶ 29.) ESL, however, was part of the Defense Systems Group within TRW. (Id.) Before December 31, 1984, TRW decided to end the ESL Plan and bring ESL employees under the TRW Plan. (Id. ¶ 30.) On December 31, 1984, Defendants terminated the ESL Plan. (Id.) Defendants told Plaintiff and thousands of his fellow employees that they would become members of the 1981 TRW Plan on January 1, 1985. (Id. ¶¶ 2, 31.) They became members of the 1981 TRW Plan on January 1, 1985. (Id. ¶ 32.) The 1981 TRW Plan was amended in 1986

(hereinafter, "1986 Plan") ². (Id. ¶ 33.) In August 1985, TRW distributed funds from the ESL Plan to Plaintiff and thousands of his fellow employees. (Id. ¶ 34.)

Prior to 1985, TRW told ESL employees that the ESL Plan would be terminated on December 31, 1984 and they would then become participants in the TRW Plan on January 1, 1985. (Id. ¶ 35.) Prior to 1986, however, employees were not told that their benefits under the TRW Plan would be subject to any offset, or informed the interest rate or methodology used to calculate the offset. (Id. ¶¶ 35-36.)

The 1986 Plan provided that Plaintiff and thousands of his fellow employees' benefits would be offset by the amount provided next to each person's name in Appendix J. (Id. ¶ 37.) Plaintiff, albeit confusingly, states: no amount was listed next to any name; in the alternative, Appendix J listed an amount, but it was an offset lower than the one Defendants applied. (Id.) Thus, there was neither an offset in the 1981 Plan nor an offset in the 1986 Plan. (Id. ¶ 38.)

From 1986 to 1996, Defendants applied an offset (based on market rates) to the pensions of Plaintiff and thousands of his fellow employees. (Id. ¶¶ 39, 41.) In 1996, Defendants rewrote the 1986 Plan and retroactively inflated the offset. (Id. ¶ 40.) The 1996 Plan provided that a participant's ESL Plan distribution would be appreciated at 8.5% per year until the participant's retirement age and then converted to a supposed "Actuarial Equivalent," meaning a hypothetical annuity value based on an 8.5% per year return and the 1971 Group Annuity Mortality Table. (Id.) In 1994, Plaintiff was told that his pension would be approximately $1,000 per month at retirement. (Id. ¶ 42.) In 2002, Northrop Grumman acquired TRW and assumed sponsorship of the TRW Plan, which it renamed the Northrop Grumman Space & Mission Systems Corp. Salaried Pension Plan. (Id. ¶ 44.)

Plaintiff started working for ESL in March 1982. (Id. ¶ 45.) He began participating in the ESL Plan following his first year of service, pursuant to the terms of the ESL Plan. (Id.) On December 31, 1984, TRW terminated the ESL Plan. (Id. ¶ 46.) On January 1, 1985, Plaintiff enrolled in the TRW Plan. (Id.) In August 1985, Plaintiff received a check for $4,078.14 from the ESL Plan. (Id. ¶ 47.) In August 1994, Plaintiff was notified that he was going to be laid off. (Id. ¶ 48.) A Human Resources Benefits Administrator told Plaintiff that he would receive approximately $1,000 per month upon retirement. (Id. ¶ 48.) Plaintiff's employment concluded on August 19, 1995; at the time, he had served the company for 13.5 years. (Id.)

When Plaintiff later inquired about withdrawing his benefits, he was told that he had accrued pension benefits of $1,066.80 per month but those benefits were being reduced to $595.46 per month based on the distribution he had received in August 1985 from the ESL Plan. (Id. ¶ 49.) Plaintiff pursued two rounds of benefits appeals. (Id. ¶ 50.) Through the appeals

---

² Plaintiff identifies the relevant plan as the 1986 Plan. Defendants, however, refer to it as the 1985 Plan. The Plan, which Defendants provide (Barlow Decl.., Ex. 2), is dated 12/16/85 and is effective as of January 1, 1985. For the purposes of consistency and clarity, the Court refers to the plan as the "1986 Plan."

process, he learned that he was "lucky" to have only worked at ESL for a short time because other employees did not receive any pension benefit at all. (Id. ¶ 51.) He also learned that the plan administrator had applied the following formula to calculate the offset applicable to Plaintiff:

> "First, the Plan increased your $3,927.25 ESL Plan distribution with 8.5% interest per year from January 1, 1985 to April 1, 2016 . . . totaling $50,273.68 . . . ."

> "Next, the Plan converted the $50,273.68 ESL Plan distribution to an equivalent single life annuity using the Plan's actuarial equivalence basis of 8.5% interest and the GAM83U mortality table, totaling $471.26 ESL Offset."

> "Finally, the Plan offset your $1,066.80 gross monthly Part A Benefit under the Plan by the $471.26 ESL Offset, totaling $595.54 Part A Benefit."

(Id. ¶ 52.) This formula had been taken from the 1996 TRW Plan.

### III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see Horosny v. Burlington Coat Factory, Inc., No. 15-05005, 2015 WL 12532178, at *3 (C.D. Cal. Oct. 26, 2015). When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint — as well as any reasonable inferences to be drawn from them — as true and construe them in the light most favorable to the non-moving party. See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). The Ninth Circuit has clarified that (1) a complaint

must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

### IV. DISCUSSION[3]

**A. Equitable Relief (1986 Plan)**

Pursuant to 29 U.S.C. § 1132(a)(3), a plaintiff seeking equitable relief must prove "both (1) there is a remediable wrong, *i.e.*, that the plaintiff seeks relief to redress a violation of ERISA or the terms of a plan;" and "(2) that the relief sought is 'appropriate equitable relief.'" Gabriel v. Alaska Elec. Pension Fund, 773 F.3d 945, 954 (9th Cir. 2014). "A claim fails if the plaintiff cannot establish the second prong . . . regardless of whether 'a remediable wrong has been alleged.'" Id. (quoting Mertens v. Hewitt Assocs., 508 U.S. 248, 254 (1993)).

Plaintiff alleges two distinct violations of ERISA which entitle him to equitable relief: (1) Prior to 1985, Defendants informed ESL employees their plan would be terminated and they would receive benefits under the existing TRW but did not mention an offset, which violated Defendants' fiduciary duties under ERISA, (Opp. at 12 (citing 29 U.S.C. § 1104(a)); and (2) After the ESL Plan was terminated and its employees added to the TRW Plan, Defendants did not inform ESL employees of how the offset worked, which violated ERISA's plain language disclosure requirement. (Id. (citing 29 U.S.C. § 1022[4]).)

---

[3] This matter appears more appropriate for a motion for summary judgment rather than a motion to dismiss under Rule 12(b)(6). In fact, the authority cited by Defendants concerned a motion for summary judgment. (Memo. at 13 (citing Day v. AT&T Disability Income Plan, 698 F.3d 1091, 1096 (9th Cir. 2012)).) Moreover, at the March 5, 2018 hearing, the Court expressed skepticism about resolving the dispute and engaging in contract interpretation at this stage.

[4] Defendants claim Plaintiff does not cite 29 U.S.C. § 1022. (Memo. at 22.) This is incorrect. (See Opp. at 12.) Thus, the Court determines Plaintiff has not abandoned this claim. To the extent Plaintiff alleges a violation of ERISA's summary plan description ("SPD") disclosure rules, the Court finds Plaintiff's allegations sufficient. The Court cannot accept Defendants' contentions that Plaintiff received a SPD (the ESL Pamphlet), which complied with ERISA's SPD disclosure requirement, as true. (Memo. at 21-22.) Notably, Defendants do not attached the ESL Pamphlet to this Motion. Instead, Defendants refer the Court to exhibits attached to an earlier motion to dismiss not presently before the Court. (See, e.g., Memo. at 23 (citing Dkt. No. 36-6 at 3).) The Court did not previously take judicial notice of these exhibits. While Defendants may be correct that the ESL Pamphlet satisfied the ERISA disclosure requirements, the Court cannot determine such without those documents properly before the Court.

Plaintiff seeks reformation and equitable estoppel.[5]  The Court addresses each in turn.

1. **Reformation**

Reformation is only appropriate in instances of fraud or mistake.  Gabriel, 773 F.3d at 955 (citation omitted) ("The power to reform contracts is available only in the event of mistake or fraud.")  Thus, to the extent Plaintiff alleges fraud by omission, Rule 9(b) applies.[6]  Although not in the context of ERISA, courts in this circuit have recognized "a plaintiff in a fraud by omission suit will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim."  In re Anthem, Inc. Data Breach Litig., No. 15-MD-02617-LHK, 2016 WL 3029783, at *35 (N.D. Cal. May 27, 2016) (quoting Falk v. Gen. Motors Corp., 496 F. Supp. 2d 1088, 1098-99 (N.D. Cal. 2007).  Thus, "a fraud by omission or fraud by concealment claim can succeed without the same level of specificity required by a normal fraud claim."  Baggett v. Hewlett-Packard Co., 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007) (internal quotation marks omitted).  One Northern District of California court offered guidance on the necessary elements a plaintiff must plead in fraud by omission: "'[T]o plead the circumstances of omission with specificity, plaintiff must describe the content of the omission and where the omitted information should or could have been revealed, as well as provide representative samples of advertisements, offers, or other representations that plaintiff relied on to make her purchase and that failed to include the allegedly omitted information.'"  In re NJOY, Inc. Consumer Class Action Litig., No. CV1400428MMMRZX, 2014 WL 12586074, at *13 (C.D. Cal. Oct. 20, 2014) (quoting Marolda v. Symantec Corp., 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009)).  Other district courts, including courts in the Central District and the Northern District of California, have recognized: "'As other courts have recognized, the Marolda requirements are not necessarily appropriate for all cases alleging a fraudulent omission.'"  Velasco v. Chrysler Grp. LLC, No. CV 13-08080 DDP VBKX, 2014 WL 4187796, at *4 (C.D. Cal. Aug. 22, 2014) (citing Overton v. Bird Brain, Inc., No. SACV 11-1054 DOC ANX, 2012 WL 909295, at *6 (C.D. Cal. Mar. 15, 2012)); see also Philips v. Ford Motor Co., No. 14-CV-02989-LHK, 2015 WL 4111448, at *12 (N.D. Cal. July 7, 2015).  In Velasco, for example, the court

---

[5] Plaintiff only appears to seek reformation and equitable estoppel, not surcharge.  Thus, the Court will not address surcharge.

[6] Rule 9(b) requires a plaintiff to plead fraud with particularity; "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."  Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003).  The Ninth Circuit, however, has held "Rule 9(b) is not applicable in cases in which the complaint alleges breaches of fiduciary duty under ERISA, and does not allege fraud or mistake."  Concha v. London, 62 F.3d 1493, 1503 (9th Cir. 1995).  It is not clear here that Plaintiff alleges fraud; he merely alleges Defendants did not disclose material information (omission).  Plaintiff writes, "[b]ecause Plaintiff's reformation claim does not necessarily require fraudulent or intentional misrepresentation, Rule 9(b) does not necessarily apply," perhaps implying that Plaintiff is not alleging fraud by omission.  (See Opp. at 18 n. 6.)  The Court, however, reading Plaintiff's SAC in the light most favorable to Plaintiff, concludes that Plaintiff alleges fraud by omission, as Plaintiff requests reformation.

determined the plaintiff established the "who, what, when, and where" test. 2014 WL 4187796, at *6. Without determining which test is most appropriate, the Court finds Plaintiff has sufficiently pled his claim under either analysis.

Defendants maintain Plaintiff's allegations are conclusory: "Here, plaintiff conclusory alleges that 'Defendants misled plan participants' regarding the value of their pension benefits, and on that basis asserts that the TRW Plan should be 'reformed' to eliminate the ESL offset." (Memo. at 18 (citing SAC ¶¶ 68, 71, 84).) Defendants maintain Plaintiff does not identify any specific communication that was misleading. (Id.) Defendants argue Plaintiff fails to meet both Rule 9(b) and Rule 8(a) pleading standards. With regard to 9(b), Defendants maintain Plaintiff has not alleged the "who, what, when, where, and how" of the misleading communications. (Reply at 4.) The Court disagrees.

Plaintiff alleges "TRW made a number of representations to ESL employees during this transition. Prior to 1985, employees of ESL were told that the ESL Plan would be terminated on December 31, 1984, and that they would become participants in the TRW Plan on January 1, 1985. In those communications, employees were not told that their benefits under the TRW Plan would be subject to any offset." (SAC ¶ 35.) "Throughout 1984 and 1985, the Retirees were assured that they would be immediately added to the TRW Plan on January 1, 1985. And for some time, no one mentioned that their future benefits would be offset by 1985 distribution from the ESL Plan, nor were any specifics of any offset mentioned." (Id. ¶ 6.) Plaintiff thus describes the communication between TRW and Plaintiff and other ESL employees, generally when it occurred, when the omitted information could have been stated, and what the omitted information consisted of. Although Plaintiff does not state who made the statement over 30 years ago, for example, the Court finds Defendants are on notice of the misconduct and Plaintiff has pled the claim with enough specificity to satisfy the requirements of Rule 9(b).

### 2. Equitable Estoppel

In an ERISA case, the elements of equitable estoppel are:

(1) the party to be estopped must know the facts; (2) [the party] must intend that [its] conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the [party asserting estoppel] must be ignorant of the true facts; and (4) the party asserting estoppel] must rely on the [other's] conduct to his inquiry.

Greany v Western Farm Bureau Life Ins. Co., 973 F.2d 812, 821 (9th Cir. 1992); see also Irigaray Dairy v. Dairy Employees Union Local No. 17 Christian Labor Ass'n of U.S. Pension Trust, 43 F. Supp. 3d 1080, 1089 (E.D. Cal. 2014). In Gabriel, reviewing a motion for summary judgment, the Ninth Circuit articulated additional requirements a plaintiff seeking equitable estoppel in the ERISA must meet: "Accordingly, to maintain a federal equitable estoppel claim in the ERISA context, the party asserting estoppel must not only meet the traditional equitable estoppel requirements, but must also allege: (1) extraordinary circumstances; (2) 'that the provisions of

the plan at issue were ambiguous such that reasonable persons could disagree as to their meaning or effect'; and (3) that the representations made about the plan were an interpretation of the plan, not an amendment or modification of the plan." 773 F.3d at 957.[7]

Defendants argue Rule 9(b) applies to equitable estoppel as well, and Plaintiff's claim fails for the reasons articulated above. To the extent Plaintiff pleads fraudulent misrepresentation or fraud by omission, the Court finds Plaintiff has met the requisite Rule 9(b) standard, as discussed above. However, it is not clear whether Plaintiff is pleading fraud, and thus whether Rule 9(b) applies.

In their Motion, Defendants contend, first, "the allegation does not describe a representation regarding the proper interpretation of an ambiguous plan provision." (Memo. at 20.) Plaintiff simply alleges a mistake in calculating benefits, which cannot provide a grounds for equitable estoppel. (Id. (citing Gabriel, 773 F.3d at 959).) Second, an oral representation cannot override the unambiguous provisions of the 1981 or 1986 Plans. (Id.) Third, Plaintiff cannot show reliance. (Id.) Fourth, the single misstatement in 1994 cannot establish "extraordinary circumstances." (Id. at 21.) Plaintiff maintains he has shown "extraordinary circumstances" as the misrepresentation threatens the entirety of Plaintiff's pension benefits. (Opp. at 20.) Plaintiff also states that estopping Defendants from applying the offset is consistent with the written plan; the plan provides that any offset will be stated in Appendix J but does not include or attach any Appendix J. (Id.; see also Dkt. No. 54-5 at 25.)

With regard to whether Plaintiff has shown extraordinary circumstances, the Ninth Circuit in Gabriel offered some guidance:

> Although we have not defined "extraordinary circumstances" in this context, courts have held that making "a promise that the defendant reasonably should have expected to induce action or forbearance on the plaintiff's part," Devlin v. Empire Blue Cross & Blue Shield, 274 F.3d 76, 86 (2d Cir. 2001), as well as "conduct suggesting that [the employer] sought to profit at the expense of its employees," a "showing of repeated misrepresentations over time," or evidence

---

[7] In his SAC, Plaintiff describes the elements of equitable estoppel as follows: "(1) a material misrepresentation, (2) reasonable and detrimental reliance upon the representation, and (3) extraordinary circumstances." (SAC ¶ 69.) In 2012, the Ninth Circuit stated: "A beneficiary may recover benefits under ERISA based on an equitable estoppel theory, if he shows: (1) a material misrepresentation; (2) reasonable and detrimental reliance on the representation; (3) extraordinary circumstances; (4) the provisions of the plan at issue are ambiguous, such that reasonable persons could disagree as to their meaning or effect; and (5) the representations must have been made to the beneficiary involving an oral interpretation of the plan." Renfro v. Funky Door Long Term Disability Plan, 686 F.3d 1044, 1054 (9th Cir. 2012) (citing Pisciotta v. Teledyne Indus., Inc., 91 F.3d 1326, 1331 (9th Cir.1996)). The Court, however, adopts the test laid out by Gabriel, a more recent Ninth Circuit decision.

> "that plaintiffs are particularly vulnerable," <u>Kurz v. Phila. Elec. Co.</u>, 96 F.3d 1544, 1553 (3d Cir. 1996), can constitute extraordinary circumstances.

773 F.3d at 957. Plaintiff alleges Defendants made "material misrepresentations on which Plaintiff and the Class reasonably relied. And the circumstances are extraordinary here for several reasons. Most notably, Defendants tricked several thousand Retirees into believing that they were being promised pension benefits when for many of them were being promised nothing at all." (SAC ¶ 70.) Thus, the Court finds Plaintiff has alleged "'a promise that the defendant reasonably should have expected to induce action or forbearance on the plaintiff's part.'" <u>Gabriel</u>, 773 F.3d at 957 (quoting <u>Delvin</u>, 274 F.3d at 86). Further, the Court cannot conclude the unambiguous provisions of the 1986 Plan provide for an offset contrary to the oral representation. In fact, as Plaintiff contends, the 1986 Plan provides for an offset in accordance with Appendix J, but no Appendix J is provided. (<u>See</u> Dkt. No. 54-5 at 25.) Accordingly, the Court denies Defendants Motion as to this claim.

**B. Benefits Payment (1986 Plan)**

When an ERISA plan grants discretion to the plan administrator, a court reviews the decision for abuse of discretion, although such review is informed by any conflict of interest appearing in the record. <u>Abatie v. Alta Health & Life Ins. Co.</u>, 458 F.3d 955, 962 (9th Cir. 2006) (en banc). "Under the deferential abuse of discretion standard of review, the plan administrator's interpretation of the plan will not be disturbed if reasonable." <u>Day v. AT&T Disability Income Plan</u>, 698 F.3d 1091, 1096 (9th Cir. 2012) (internal quotation marks and citation omitted). "ERISA plan administrators abuse their discretion if they render decisions without any explanation, . . . construe provisions of the plan in a way that conflicts with the plain language of the plan or rel[y] on clearly erroneous findings of fact." <u>Id.</u> (internal quotation marks and citation omitted).

Here, the Administrative Committee had full discretion. According to the Northrop Grumman Corporation Cash Balance Program, January 1, 2014, the Administrative Committee has the discretionary authority to "[d]etermine the amount of benefits" due to participants and to "[c]onstrue and interpret the terms of the Plan, including the power to remedy possible ambiguities, inconsistencies or omissions." (Barlow Decl., Ex. 6 at § 13.08(f), (g); <u>see also</u> Ex. 2. At § 9.3(f), (g) ("The Board shall have such powers as are necessary for the proper performance of the following: interpreting the Plan . . . [and] preparing and distributing in such a manner as the Board determines to be appropriate suitable information explaining the Plan.") The Administrative Committee is comprised of at least three members appointed by the Compensation Committee of the Board of Directors of Northrup Grumman Corporation (Barlow Decl., Ex. 6 at § 13.02), indicating that there is an inherent conflict. <u>See</u> <u>Abatie</u>, 458 F.3d at 967 ("This standard applies to the kind of inherent conflict that exists when a plan administrator both administers the plan and funds it, as well as to other forms of conflict.") However, in <u>Abatie</u>, the Ninth Circuit also read <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101 (1989), "to require abuse of discretion review whenever an ERISA plan grants discretion to the plan administrator, but a review informed by the *nature, extent, and effect* on the decision-making process of any

conflict of interest that may appear in the record." 458 F.3d at 967. The Ninth Circuit explained:

> Our court has implemented this approach by including the existence of a conflict as a factor to be weighed, adjusting the weight given that factor based on the degree to which the conflict appears improperly to have influenced a plan administrator's decision. See Abatie, 458 F.3d at 968; see also Nolan v. Heald College, 551 F.3d 1148, 1153–54 (9th Cir. 2009); Saffon, 522 F.3d at 867–68. These cases should not be mistaken to imply that the existence of a conflict of interest alters the standard of review itself, rather than merely its application. As Abatie explicitly held, if a conflict of interest exists, "abuse of discretion review applies" and "that conflict must be weighed as a factor in determining whether there is an abuse of discretion." 458 F.3d at 965 (internal quotation marks and alteration omitted).

Montour v. Hartford Life & Acc. Ins. Co., 588 F.3d 623, 631 (9th Cir. 2009); see also Stephan v. Unum Life Ins. Co. of Am., 697 F.3d 917, 929 (9th Cir. 2012) ("While not altering the standard of review itself, the existence of a conflict of interest is a factor to be considered in determining whether a plan administrator has abused its discretion. [citation omitted.] The weight of this factor depends upon the likelihood that the conflict impacted the administrator's decisionmaking.") Plaintiff does not raise any argument regarding the structural conflict. The Court also does not find any evidence that the administrators determined Plaintiff's benefits in a biased manner.

Defendants ask the Court to find that the interpretation underlying the calculation of Plaintiff's ESL offset was reasonable. (Memo. at 13.) The 1986 Plan explained the computation of benefits:

> The monthly normal retirement benefit of an eligible Participant shall be . . . reduced by the amount listed opposite the Participant's name in Appendix J, said amount representing the age 65 actuarial annuity value of the Participant's account balance accrued under . . . the ESL Retirement Fund.

(Barlow Decl., Ex. 2 at Schedule 10 § D.1.) No Appendix J was included in the 1986 Plan. The Plan, however, defined "Actuarial Equivalent":

> "Actuarial Equivalent" means a benefit having an equal value when computed on the basis of an eight and on-half percent (8-1/2%) interest assumption and on the 1971 Group Annuity Mortality Table adjusted to a unisex basis for a Participant population deemed to be two-thirds (2/3) male and one-third (1/3) female.

(Id. at § 1.1(b).)

Plaintiff argues he is entitled to relief whether or not Appendix J exists. (See generally Opp. at 5-12.) First, if Appendix J exists, Plaintiff contends the amounts listed in Appendix J are smaller than the amounts actually offset against Plaintiff's pension. (Id. at 5-6 (citing SAC ¶¶ 7, 37, 76).) Plaintiff further maintains whether Appendix J exists is a question of fact not suitable for resolution at this stage of the litigation. (Id. at 6.) Alternatively, if Appendix J does not exist, Plaintiff argues Defendants' Motion should still be denied. (Id. at 7.) "If Appendix J is missing, then there is a fundamental gap in the Plan's explication of how to calculate the offset. That gap cannot be filled by Defendants' proposed interpretation, because that interpretation is plainly foreclosed by the Plan's terms." (Id.)

Defendants contend that even absent Appendix J, the 1986 Plan specified how to calculate an age 65 actuarial annuity value. (Memo. at 13-15.) Second, Defendants state, the approach they followed is in line with Ninth Circuit guidance regarding the appropriate way to calculate offsets for benefits attributable to prior distributions. (Id. at 15.) Defendants argue Plaintiff's interpretation of the Plan is unreasonable, as Plaintiff states there was no offset because no amount was listed in Appendix J. (Memo. at 16 (citing SAC ¶¶ 36-37).)

The 1986 Plan defines "actuarial equivalent," not "actuarial annuity value," as excerpted above. The Administrative Committee applied the definition of "actuarial equivalent" to "actuarial annuity value" and to the Appendix J provision. At this time, the Court need not determine the proper or most reasonable interpretation, only whether the interpretation the Administrative Committee adopted is reasonable. In McDaniel v. Chevron Corp., the Ninth Circuit determined the plan's mortality assumptions for actuarially equivalent benefits were ambiguous. 203 F.3d 1099, 1113 (9th Cir. 2000). Thus, the court's task was to "determine whether the Plan Administrator abused its discretion by interpreting those terms as providing a nine month set forward to the UP-1984 Mortality Table." Id. "The question we must ask is not 'whose interpretation of the plan documents is most persuasive, but whether the . . . interpretation is unreasonable.'" Id. (quoting Canseco v. Construction Laborers Pension Trust, 93 F.3d 600, 606 (9th Cir. 1996)).

The Court cannot determine whether the Administrative Committee's interpretation is reasonable at this time. Discovery has not occurred; it is unclear whether an Appendix J exists, which may contradict the Administrative Committee's interpretation, making it unreasonable. Thus, it is too early to determine whether this interpretation is reasonable and the Court defers determination. Accordingly, the Court DENIES Defendants' Motion.

**C. Equitable Relief and Benefits Payment (1981 Plan)**

Plaintiff seeks equitable relief and benefits payment under the 1981 Plan. Plaintiff alleges Defendants made ESL a party to the TRW Plan before the 1986 Plan existed. (Opp. at 21.) "Because the plan in existence at the relevant time was the 1981 Plan, Plaintiff by necessity became a participant in and accrued benefits under that Plan." (Id. at 21-22.) Defendants contend Plaintiff was not a participant in and was not promised benefits under the 1981 Plan. (Memo. at 12.) Plaintiff dismisses Defendants' argument that Appendix A does not list ESL as a


Covered Subsidiary, stating that Appendix A only lists the Covered Subsidiaries as of January 1, 1981 and ESL was added to the Plan in 1985. (Opp. at 23 n.9.) Defendants argue the Plan Amendments, as included in the Plan extend coverage to other employees of a particular division but not of the ESL division. (Reply at 7.) Thus, if ESL employees were added to the Plan, it would be included in an amendment. (Id.)

Accordingly, as it stands, the 1981 Plan excluded ESL employees. (See Dkt. No. 54-8 Appendix A; see also 54-8 at Schedule 2, § A.b.) Plaintiff's allegations that ESL employees were added to the 1981 Plan directly contradict the language of the Plan. "The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.), opinion amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001) (citation omitted). In sum, the Court agrees with Defendants; the terms of the 1981 Plan did not include ESL employees as participants and no amendment or exception states otherwise. Thus, Plaintiff's claim for relief under the 1981 Plan fails. See Miller v. Rite Aid Corp., 504 F.3d 1102, 1105-06 (9th Cir. 2007) ("A civil action under ERISA may be brought by a 'participant' in or 'beneficiary' of an ERISA plan. 29 U.S.C. § 1132(a)(1).").

## V. LEAVE TO AMEND

Rule 15 provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Ninth Circuit has held that "'[t]his policy is to be applied with extreme liberality.'" Eminence Capital, L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)). Generally, a "district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citations omitted). Here, the Court determines any amendment would be futile. Accordingly, the Court does not grant leave to amend, as ESL employees were not included in the 1981 Plan as evidenced by the face of the plan.

## VI. CONCLUSION

For the foregoing reasons, the Court DENIES IN PART and GRANTS IN PART Defendants' Motion. The Court DENIES Defendants' Motion as to the equitable relief and benefits sought in connection with the 1986 Plan and GRANTS Defendants' Motion as to the equitable relief and benefits sought in connection with the 1981 Plan.

**IT IS SO ORDERED.**