Peter K. Stris (SBN 216226)
Elizabeth Brannen (SBN 226234)
Dana Berkowitz (SBN 303094)
Victor O'Connell (SBN 288094)
**STRIS & MAHER LLP**
777 S Figueroa St, Ste 3850
Los Angeles, CA 90017
Telephone: (213) 995-6800
Facsimile: (213) 261-0299

Shaun P. Martin (SBN 158480)
University of San Diego Law School
5998 Alcala Park, Warren Hall
San Diego, CA 92110
Telephone: (619) 260-2347
Facsimile: (619) 260-7933

*Counsel for Plaintiff*
JOHN BALEJA, on behalf of himself
and all others similarly situated

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# EASTERN DIVISION

| | |
|---|---|
| JOHN BALEJA, *on behalf of himself and all others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> NORTHROP GRUMMAN SPACE AND MISSION SYSTEMS CORP. SALARIED PENSION PLAN; NORTHROP GRUMMAN BENEFIT PLANS ADMINISTRATIVE COMMITTEE; NORTHROP GRUMMAN CORPORATION; and DOES 1 through 10, inclusive, <br><br> Defendants. | Civil Case No.: 5:17-cv-00235-JGB-SP <br><br> **MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S DECLARATIONS** <br><br> Hearing:  October 19, 2020 <br> Time:  9:00 a.m. <br> Location:  Courtroom 1 <br> Judge:  Hon. Jesus G. Bernal <br><br> Pretrial Conf.:  April 5, 2021 <br> Trial:  April 20, 2021 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

I.    PLAINTIFF DID NOT VIOLATE RULE 26. ................................. 1

      A.    Defendants Were Repeatedly Informed of the Declarants.................. 2

      B.    No Violation of Rule 26 Occurred. ....................................... 7

            1.    Plaintiff Properly Answered Interrogatory No. 20. .................. 8

            2.    Plaintiff's Early Disclosures Were Properly Made. ................. 9

      C.    Defendants Misplace Their Initial Burden on Summary
            Judgment. ........................................................... 11

II.   EXCLUSION OF THE DECLARATIONS WOULD BE
      UNWARRANTED. ..................................................... 16

      A.    Plaintiff's Disclosures Were Substantially Justified. ................... 16

      B.    Any Failure to Disclose Was Harmless. ............................... 19

            1.    Defendants Would Have Done Nothing Different. ................. 19

            2.    The Failure to Depose The Declarants Does Not Cause
                  Prejudice............................................. 21

            3.    Defendants Already Knew About These Eleven Class
                  Members.............................................. 22

III.  THE MOTION SHOULD BE HEARD ON DECEMBER 21, 2020. ......... 25

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Benjamin v. B&H Educ., Inc.*,
    No. 3:13-cv-04993-VC, 2015 WL 6164891 (N.D. Cal. Oct. 16, 2015).............23

*Bright v. Dennis Garberg & Assocs., Inc.*,
    No. 2:10-cv-09574-RGK-JC, 2012 WL 13006212 (C.D. Cal. Aug. 23,
    2012) ......................................................................................................23, 24

*Cargill Inc. v. Progressive Dairy Sols, Inc.*,
    No. 1:07-cv-00349-LJO-SMS, 2008 WL 2235354 (E.D. Cal. May 29,
    2008) ......................................................................................................11, 12

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)..................................................................................*passim*

*Doe v. Nat'l R.R. Passenger Corp.*,
    No. 2:94-cv-05064-HH, 1996 WL 92096 (E.D. Pa. Feb. 29, 1996) .................15

*Don v. Unum Life Ins. Co.*,
    No. 2:13-cv-04502-DSF-VBK, 2014 WL 12610140 (C.D. Cal. Oct. 24,
    2014) ...............................................................................................................8

*El Ranchito, Inc. v. City of Harvey*,
    207 F. Supp. 2d 814 (N.D. Ill. 2002).......................................................24, 25

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
    MDL No. 1446, 2007 WL 5023541 (S.D. Tx. Feb. 1, 2007)...........................17

*Frommert v. Conkright*,
    433 F.3d 254 (2d Cir. 2006) .....................................................................8, 10

*Harlow v. Sprint Nextel Corp.*,
    No. 2:08-cv-02222-KHV-TJJ, 2012 WL 646003 (D. Kan. Feb. 28, 2012) .........8

*Helfand v. Gerson*,
    105 F.3d 530 (9th Cir. 1997) ....................................................................4, 8

*Keebler Co. v. Murray Bakery Prod.*,
    866 F.2d 1386 (Fed. Cir. 1989) ...................................................................22

*Midwestern Pet Foods, Inc. v. Societe des Produits Nestle S.A.*,
    685 F.3d 1046 (Fed. Cir. 2012) ...........................................................5

*Moyle v. Liberty Mut. Ret. Benefit Plan*,
    263 F. Supp. 3d 999 (S.D. Cal. 2017)................................................15

*Rivera-Adams v. Wyeth*,
    No. 3:03-cv-01713-JAF, 2010 WL 5072541 (D.P.R. Dec. 8, 2010) .................16

*Russ v. Int'l Paper Co.*,
    943 F.2d 589 (5th Cir. 1991) ....................................................11, 15

*Sako v. Wells Fargo Bank*,
    No. 3:14-cv-01034-GPC-JMA, 2016 WL 110513 (S.D. Cal. Jan. 8, 2016) ......19

*Schwartz v. O'Grady*,
    No. 1:86-cv-04243-JMC, 1990 WL 156274 (S.D.N.Y. Oct. 12, 1990).............16

*Stearns Airport Equip. Co. v. FMC Corp.*,
    170 F.3d 518 (5th Cir. 1999) ...........................................................22

**Other Authorities**

Fed. R. Civ. P. 26(a)(1)(A)(i) ...............................................................1, 10

Fed. R. Civ. P. 26(e)............................................................................9

Fed. R. Civ. P. 26(e)(1)(A) ................................................................1, 2

Fed. R. Civ. P. 37(c)(1).................................................................16, 19

Schwarzer, Tashima & Wagstaffe, *Federal Civil Procedure Before Trial*
    (Rutter Group 2005)........................................................................22

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE DECLARATIONS**
**Case No. 5:17-CV-00235-JGB-SP (C.D. Cal.)**

Defendants claim they were irreparably prejudiced because they did not know class members could submit evidence about what disclosures were made to them. Every factual predicate of Defendants' assertion is wrong. The Court should consider, not strike, the class member declarations.

## I. PLAINTIFF DID NOT VIOLATE RULE 26.

Defendants say they did not know that class members might have discoverable evidence because Plaintiff did not disclose those class members in Plaintiff's (1) Rule 26 early disclosures, or (2) in response to Interrogatory No. 20.

Rule 26(a) requires early disclosure (at the outset of the lawsuit) of "the name and, if known, the address and telephone number of each individual likely to have discoverable information . . . that the party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(i). Rule 26 does not require disclosure of names of witnesses unknown at the time of this early disclosure; rather, Rule 26(e) requires supplementation of the disclosure within a reasonable time "if the party learns that in some material respect the disclosure or response is incorrect," with the caveat that no such supplementation is required "if the additional or corrective information has [] otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A).

Defendants' Interrogatory No. 20 did not request the identity of witnesses. It asked Plaintiff only to "identify all persons with whom you or your counsel have communicated about the facts alleged in the complaint." Plaintiff's Responses To Defs.' Second Set of Interrogatories ("Pl.'s Resps.") at 5, Dkt. 178-6. Rule 26 similarly required responsive information only available as of the date the response was made: November 4, 2019. If Plaintiff thereafter communicated with additional persons "about the facts alleged in the complaint," Rule 26(e) required supplementation within a reasonable time unless that additional information was already known to Defendants. Fed. R. Civ. P. 26(e)(1)(A).

### A.     <u>Defendants Were Repeatedly Informed of the Declarants</u>.

Defendants concede that Plaintiff's initial Rule 26 early disclosure and its response to Interrogatory No. 20 accurately and correctly set forth all responsive information when made. That is not surprising. Plaintiff served both in 2019; at that time, neither Plaintiff nor his counsel had communicated with any of the eleven challenged class members. Declaration of Shaun P. Martin (Sept. 28, 2020) ("Martin Decl.") ¶ 2.

Defendants instead assert that Plaintiff was required in July 2020—*after* the discovery cutoff date—to supplement these answers under Rule 26(e) to identify these eleven class members. *See* Martin Decl. ¶ 9 (noting that these class members were generally contacted only after the discovery cutoff date of July 6, 2020 and typically in direct response to the previously-undisclosed declaration from Sheryl Fleshin that Defendants filed on July 20, 2020 in support of their motion for summary judgment, Dkt 153-69).

But Rule 26(e) expressly does not require supplementation to reveal the identity of those persons already known to Defendants to have potentially discoverable information. *See* Fed. R. Civ. P. 26(e)(1)(A) (no supplementation required "if the additional or corrective information has [] otherwise been made known to the other parties during the discovery process or in writing"). Defendants undeniably knew about these eleven class members before July 2020.

**<u>Defendants' Own Documents</u>.** First, Defendants knew at least by 2019 both the identity of these individuals and that they might have discoverable information. Defendants *themselves* produced in July 2019 a spreadsheet ("Exhibit B") that contained not only the names of these class members, but also their contact information and home address. Martin Decl. ¶ 3. Indeed, the only way Plaintiff's counsel knew about these individuals was through this document produced by Defendants themselves. Martin Decl. ¶ 3.

Defendants surely knew that class members would potentially have discoverable information about what documents they received and did not receive from Defendants. That was something that they hardly needed to learn from Plaintiff.

Moreover, during discovery in 2018, 2019 and early 2020, Defendants also produced individual personnel files of each class member, including but not limited to the eleven class members at issue here. Martin Decl. ¶ 4. Those personnel files not only also contained similar contact information for these eleven class members, but also identified (through inclusion or omission) what documents Defendants did and did not send these individuals. *Id*. Given these disclosures and documents, Defendants cannot claim to have been unaware of the identity of these class members. Like Plaintiff, Defendants had information about how to reach them, if they wished. And, despite Defendants' contrary allegations in July 2020, Defendants can hardly claim not to have known that these class members might confirm through testimony that they did not, in fact, receive the documents omitted from their personnel files.

**Plaintiff's Initial Disclosures.** Plaintiff's initial disclosures, served in February 2019, expressly identified those individuals that he thought would "likely" have potentially discoverable information. Plaintiff disclosed that these witnesses would include:

- Former Northrop "employees to be identified in discovery" (e.g., the individual class members), including but not limited to "all persons who were enrolled in the TRW Plan after being participants in the ESL Plan" (again, each class member), Pl.'s Rule 26(a) Initial Disclosures at 4-5 ("Pl.'s Initial Disclosures"), Dkt. 178-3; as well as

- "[T]hose individuals whose names appear on produced documents." Pl.'s Initial Disclosures at 5, Dkt. 178-3.

Defendants admit (as they must) that, as class members, the eleven declarants at issue "were enrolled in the TRW Plan after being participants in the ESL Plan" and, separately,

had their "names appear on produced documents" (e.g., their personnel files produced in discovery by Defendants).

Had Defendants thought that this disclosure was too broad, or insufficient to narrow the list of potential witnesses, they could have met and conferred on this issue, or brought a motion. They did neither. Defendants cannot retroactively complain about their tactical decision, much less seek the unfair and unwarranted advantage of having the factually accurate testimony of class members excluded because Defendants elected not to follow up.

Nor would such a motion have been successful in any event. It is, in fact, true that each of the class members likely could have possessed relevant information, if only about their own damages (e.g., how much they were entitled to recover under any remedy) and their own situation (e.g., what disclosures were made). Plaintiff disclosed that each former participant in the ESL Plan might have discoverable information, and that the individuals listed on any documents might have the same. As indeed they do. Plaintiff was not required to narrow down this list to those he thought might be the most "important" class members, or to list all 2,000 of them individually. Defendants could have followed up, in discovery or in a meet-and-confer, but did neither.

**Plaintiff's Responses to Interrogatories.** Plaintiff further revealed that any of the class members (including the eleven at issue) might have discoverable information in their formal written interrogatory responses. The only interrogatory that Defendants assert required disclosure of the eleven challenged class member declarants is Interrogatory No. 20, which states: "Identify all persons with whom you or your counsel have communicated about the facts alleged in the complaint." Pl.'s Resps. at 5, Dkt. 178-6. Plaintiff responded to that request by accurately (and properly) objecting that identifying which of their particular clients with whom they have communicated was an improper invasion of the attorney-client privilege, which it was. Defendants did not move to compel; as such, they waived (and cannot assert) any alleged deficiency in Plaintiff's response. *See Helfand v. Gerson*, 105 F.3d 530, 536 (9th Cir. 1997) ("The failure to

obtain this information, however, was the plaintiffs' fault. . . . They did not challenge the defendants' assertion of the privilege. By failing to bring a motion to compel production, the plaintiffs waived their objection to the assertion of the privilege. . . ."); *Midwestern Pet Foods, Inc. v. Societe des Produits Nestle S.A.*, 685 F.3d 1046, 1049 (Fed. Cir. 2012) ("[I]t was incumbent upon Midwestern to file a timely motion to compel as a means of testing Nestle's objections. Having failed to do so, the Board ruled, Midwestern had waived its right to object to particular evidence on the ground that Nestle should have produced it during discovery but did not.").

In any event, Plaintiff disclosed in his interrogatory responses (yet again) that the list of class members that might have information relevant to the lawsuit would include each of the class members whose information was produced during discovery (e.g., those class members who had personnel files produced in discovery). *See* Pl.'s Second Am. Resps. to Defs.' First Set of Interrogatories ("Pl.'s Sec. Am. Resps.") at 24, Dkt. 178-10 (response to Interrogatory No. 16) ("The information requested by this Interrogatory may be obtained by examining the documents that will be produced in response to the Propounding Party's requests for production of documents . . ."); Pl.'s Resps. at 5, Dkt. 178-6 (response to Interrogatory No. 20) (incorporating response to Interrogatory No. 16). Having elected to propound these (and only these) interrogatories, and having further elected not to move to compel in an attempt to challenge the privilege objection or limit the group of identified individuals, Defendants cannot be heard to complain now about alleged overbreadth or inadequacy.

**Plaintiff's Subsequent Disclosures.** Finally, consistent with Rule 26(e)'s dictate that supplemental disclosures can also be made "in writing" and outside of formal discovery amendments, Plaintiff repeatedly and unambiguously made clear to Defendants in June 2020 that the universe of potentially discoverable witnesses included all class members (including but not limited to the eleven), as well as Plaintiff's position that any attempt to narrow that list would improperly invade the attorney-client privilege.

On June 18, 2020, Defendants sent a letter that asked Plaintiff to supplement his answer to Interrogatory No. 16. Dkt. 178-7. (To be clear: the only interrogatory that Defendants rely upon in its Motion to Strike is Interrogatory No. 20, Dkt. 178-6, but Defendants only ever met and conferred about Interrogatory No. 16, yet again waiving any objection to the sole interrogatory response on which they rely in their motion.) Later that same day, counsel for Plaintiff responded that identifying which particular class member/clients had contacted or been contacted by counsel for Plaintiff was an impermissible invasion of the attorney-client privilege, and that the list of potential witnesses accordingly included all of the people identified in response to the interrogatory (that is, each class member). Dkt. 178-8.

One week later, on June 25, 2020, Plaintiff not only reiterated that same position, but also again made clear that counsel for Plaintiff <u>continued</u> to contact and be contacted by class members, and that each of these current and future class members might have discoverable information relevant to the lawsuit. Dkt. 178-9. Counsel for Plaintiff:

- Told Defendants that the list of those relevant class members was "located on the Exhibit B spreadsheet that Defendants produced in discovery, as well as . . . the last known addresses of these individuals;"

- Told Defendants (out of "an abundance of caution") the names and addresses of over 100 individual class members with whom counsel for Plaintiff had "communicated or attempted to communicate" <u>as of June 25, 2020</u>; and

- Told Defendants expressly that counsel for Plaintiff would continue to contact additional class members after that date and that "class members may continue to communicate with class counsel (including for updates, case status, <u>initial contact</u>, etc.) throughout the litigation."

Dkt. 178-9 (emphasis added). This was not only fully disclosed to Defendants, but also entirely accurate; as of that date, <u>none</u> of the eleven class members identified by Defendants in their Motion to Strike had yet communicated with counsel for Plaintiff. Martin Decl. ¶ 7.

6

Defendants expressly stated in their June 18 letter that they would "move to compel" if sufficient information was not provided. Dkt. 178-7 at 1 ("Defendants will move to compel your further responses."). Defendants did not do so. Indeed, after Plaintiff provided this additional information, including an express statement that additional individual class members might come forward in the future with additional discoverable information, Defendants did not even further meet-and-confer.

Plaintiff repeatedly told Defendants that all class members might have discoverable and relevant information. If they thought that was insufficient, Defendants could have met and conferred. They did not. If they thought Plaintiff's response was too broad, they could have filed a motion. They did not. Defendants cannot obtain a strategic advantage from their own deliberate refusal to act, much less can they seek to exclude relevant evidence from class members whose identities and contact information were known and disclosed to them for years.

Plaintiff told Defendants of those witnesses then known to them. Pursuant to Rule 26(e), Plaintiff then repeatedly told Defendants "in writing" that each of the members of the class could have discoverable information, a fact that Defendants surely knew from the outset anyway. Plaintiff did what Rule 26 required. Having elected not to move to compel, Defendants cannot now complain that Plaintiff's disclosures were overly broad or non-specific. The Court should decline to suppress relevant evidence.

## B.   No Violation of Rule 26 Occurred.

Second, wholly beyond the multiple disclosures identified *supra* at 3-7, Defendants also cannot establish any underlying violation of Rule 26. Defendants claim that Plaintiff submitted (1) an improper answer to Interrogatory No. 20, Pl.'s Resps. at 5, Dkt. 178-6,[1] and (2) an improper early disclosure under Rule 26(a). Neither is true.

---

[1] Defendants' Motion to Strike unambiguously relies only on Interrogatory No. 20, not any other interrogatory request. The Motion asserts only one "relevant interrogatory" (No. 20). Dkt. 178-1 at 10:6. The only interrogatory cited in the motion is Interrogatory No. 20. *See* Dkt. 178-1 at 2:25-27 (quoting the text of Interrogatory No. 20); *compare* Pl.'s Sec. Am. Resps. at 26, Dkt. 178-10 (containing the substantially different text of

1          1.     Plaintiff Properly Answered Interrogatory No. 20.

2          Defendants  indisputably cannot establish an improper answer to Interrogatory No.

3    20. That interrogatory states: "Identify all persons with whom you or your counsel have

4    communicated about the facts alleged in the complaint." *Id*. To the degree it requested

5    communications with non-class members, Defendants concede that this request was

6    answered fully and completely. *Id*. at 5-6 (identifying specific non-class members

7    contacted). To the degree it requested identification of particular class members contacted

8    by counsel, however, it improperly requested privileged attorney-client and work product

9    information, an objection Plaintiff properly and repeatedly asserted. *Id*. at 5 (objecting on

10   these grounds); Dkt. 178-8 (reiterating these objections); Dkt. 178-9 (same); *see also Don*

11   *v. Unum Life Ins. Co.*, No. 2:13-cv-04502-DSF-VBK, 2014 WL 12610140 at *2 (C.D.

12   Cal. Oct. 24, 2014) (communications with class counsel privileged); *Harlow v. Sprint*

13   *Nextel Corp.*, No. 2:08-cv-02222-KHV-TJJ, 2012 WL 646003 at *6-7 (D. Kan. Feb. 28,

14   2012) (same).

15         Moreover, even if this objection was meritless (it was not), by electing not to move

16   to compel, Defendants waived any objection to Plaintiff's interrogatory answer, including

17   his assertion of privilege. *Helfand*, 105 F.3d at 536. In any event, the interrogatory only

18   requested communications "about the facts alleged in the Complaint," Pl.'s Resps. at 5,

19   Dkt. 178-6, whereas the facts advanced by the eleven class members are not so alleged,

20   and concern Defendants' subsequently asserted defenses based upon various alleged

21   disclosures. The Complaint alleges (and can prevail upon) the inadequacy of the SPD and

22   the text of the Plan; by contrast, each of the non-SPD disclosures alleged by Defendants

23   (to which the declarants respond) are both irrelevant to the disclosure claim, as well as

24   part of Defendants' case and not a material allegation of the Complaint. *See Frommert v.*

25   *Conkright*, 433 F.3d 254, 267 (2d Cir. 2006) (holding that SPD disclosure claim cannot

26   ─────────────────

27   Interrogatory No. 16). And when Defendants' Motion to Strike mentions the relevant
     interrogatory, it cites *solely* to Interrogatory No. 20. *See* Dkt. 178-1 at 2:27-28 (citing
28   Exhibit 4, at No. 20).

be defeated by alleged existence of non-SPD "corporate literature" that allegedly contained omitted material).

Finally, the response to Interrogatory No. 20 was indisputably accurate at the time. It was served in 2019, over a half-year before any of the eleven class members at issue were contacted. Martin Decl. ¶ 2. Interrogatory answers can be amended at any time. Fed. R. Civ. P. 26(e). When new class members contacted Plaintiff prior to the discovery cutoff, he timely disclosed their identity. *See* Dkt. 178-9. Whereas class members who contacted counsel for Plaintiff after the discovery cutoff need not be disclosed because discovery (and amended discovery) had terminated; and, in any event, they were disclosed shortly thereafter alongside their sworn declarations. In short, there was no violation with respect to Interrogatory No. 20, which was properly answered and as to which, in any event, Defendants waived any alleged insufficiency by not moving to compel.

2.   Plaintiff's Early Disclosures Were Properly Made.

Nor do Defendants establish that Plaintiff's early disclosures were improper. To reiterate: Plaintiff's initial early disclosures indisputably properly disclosed all of the relevant witnesses of whom he knew at the time, which necessarily did not include the eleven declarants because (1) the class had not yet been certified, and (2) Plaintiff's counsel did not know of these class members, whose identities were revealed only in "Exhibit B" subsequently produced by Defendants in discovery. Martin Decl. ¶ 3. And, as noted *supra* at 3-7, these early disclosures were properly and repeatedly supplemented "in writing" as required by Rule 26(e) to make clear what was already known to even the most casual observer: that every class member, each of whom had his or her full personnel file produced by Defendants in discovery, could potentially have relevant information about the lawsuit; e.g., what disclosures either contained or missing from that file were made to her. *See supra* at 3-7 (describing repeatedly such disclosures in formal initial disclosures and amendments, responses to formal interrogatories, as well as "in writing" in communications between counsel).

9

Nor, in any event, was the identity of each class member that might have relevant evidence (much less the "most important" ones) required to be disclosed under Rule 26(a) in the first place. For one thing, Defendants already knew about their existence; Defendants both knew their identity and had contact information for each of these class members long before Plaintiff did. Martin Decl. ¶ 4. What's more, Defendants took express advantage of that fact, and admit that they used this contact information to communicate with such class members *prior* to the class being certified. *See* Defs.' Opp'n to Pl.'s Mot. to Bar Class Member Contact at 8, Dkt. 150 (claiming that contact with putative class members was ethically permitted and admitting that they did so; e.g., by contacting class member Tuffley); Excerpts of June 24, 2020 Dep. of Jean Tuffley ("Tuffley Dep.") at 214:7-9, Dkt. 149-3; Add'l Excerpts of Tuffley Dep. at 240:11-19, Dkt. 150-4.

Moreover, Rule 26(a) only required Plaintiff to disclose those witnesses of which it was aware that it expected to use to "support its claims" (unless for impeachment). Fed. R. Civ. P. 26(a)(1)(A)(i). As noted *supra* at 8-9, Plaintiff's claims in this litigation need not rely on the existence or non-existence of the non-SPD "corporate literature" at issue; e.g., the alleged newsletters, investment fairs, benefits statements, DVRs, and other random facts that Defendants asserted in their motion for summary judgment and to which the eleven class members responded. *Frommert*, 433 F.3d at 267 (noting that such alleged disclosures are irrelevant). Those alleged facts are also, as Defendants admit, irrelevant to both plan interpretation and the illegal cutback claim.

The only reason these ancillary disclosures are at issue on summary judgment is to refute Defendants' subsequently-disclosed defenses. These alleged disclosures are not offered to "support [Plaintiff's] claims." The facts raised in the eleven class member declarations are not alleged in the Complaint. They instead respond to portions of <u>defenses</u> (e.g., statutes of limitation) that Defendants first formally supported in this litigation in their motion for summary judgment filed on July 20, 2020, after the discovery cutoff date. *See also infra* at 18-19 (noting that eleven class members properly

10

responded in Plaintiff's opposition to Defendants' factual allegations in their motion for summary judgment in July 2020 made based upon the declaration of a witness, Sheryl Fleshin, who was neither deposed nor listed by Defendants as having any information *at all* about the particular disclosures allegedly made to class members).

Regardless, Defendants knew—and Plaintiff repeatedly disclosed "in writing"—that each of the class members identified in "Exhibit B" might have discoverable information. To the degree Defendants thought such disclosures were too broad, or should be more limited to only those class members to whom counsel had spoken or for whom counsel presently intended to submit a declaration, Defendants could have filed a motion. Defendants did not do so. They cannot now complain about the breadth of a disclosure to which they deliberately decided neither to object nor challenge.

### C. Defendants Misplace Their Initial Burden on Summary Judgment.

To the degree Defendants have any legitimate complaint about the scope of discovery and responses thereto made in this litigation, it is really about (and arises from) the inadequacy of their own discovery decisions and concomitant refusal to plan for or satisfy their initial stage one burden in moving for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 319-28 (1986) (describing these burdens).

The typical, commonly-accepted fashion in which a defendant may properly move for summary judgment is to use written discovery to identify the facts and evidence on which the plaintiff will seek to prove her case and then, on the basis of such discovery responses, move for summary judgment by showing that those identified facts isolated by the nonmoving party do not create a genuine issue of material fact. *Id*. at 322-23; *Russ v. Int'l Paper Co.*, 943 F.2d 589, 592-93 (5th Cir. 1991). It is precisely on that basis that the cases cited by Defendants hold that parties are generally bound to the specific disclosures they make in their discovery responses; because the moving party, having based its motion for summary judgment upon those precise answers, is entitled to rely upon them. *See*, *e.g.*, *Cargill Inc. v. Progressive Dairy Sols, Inc.*, No. 1:07-cv-00349-LJO-SMS, 2008 WL 2235354 at *7-10 (E.D. Cal. May 29, 2008) (striking declarations by witnesses who

were not disclosed in response to Interrogatory No. 7, which formed the basis of Defendants' summary judgment motion); *compare with id.* at *7-8 (denying summary judgment where Defendant had failed to support its motion with similar discovery responses by the non-moving party).

But Defendants here indisputably did not do that. Even the most rigorous examination of the *entirety* of the written discovery that Defendants propounded in this action will reveal the wholesale absence of such contention or fact-disclosing requests. *See* Pl.'s Resps., Dkt. 178-6 (bereft of any such discovery); Pl.'s Sec. Am. Resps., Dkt. 178-10 (same). Defendants never asked: "What disclosures do you allege were made to class members beyond the ones contained in their personnel files?" They never asked: "Who do you believe will testify that they did not receive the ESL newsletter?" They never said: "State all facts that support your contention that you did not receive the disclosures alleged by Defendants."

Moreover, critically, Defendants' motion for summary judgment neither relied upon nor even supported itself with any such discovery responses. *See* Dkt. 153-1 (omitting any argument or reliance upon any such discovery answers). Rather, Defendants' summary judgment motion does precisely what the Supreme Court in *Celotex* said moving parties categorically cannot do: simply assert, without evidence at all from such discovery responses, that the nonmoving party cannot prove its case. Indeed, Defendants' summary judgment motion is consistent, section-by-section and defense-by-defense, in its steadfast failure to rely upon or cite any discovery responses— and often, any evidence *at all*—for its factual assertions:

- Section I.A. ("Time Barred"). *See* Dkt. 153-1 at 13:2-4 ("But there is no evidence here that Defendants made knowingly false misrepresentations, that they had an intent to defraud, or that they took any affirmative steps to conceal the ESL Offset") (internal quotation marks omitted) (citing *nothing* for this factual contention, and electing not to cite or rely upon any discovery response for this factual assertion);

- <u>Section I.B. ("No Disclosure Violation")</u>. *See* Dkt. 153-1 at 16:11-23 (claiming that Defendants disclosed the ESL Offset "in newsletters, pension worksheets, letters, and personalized benefits estimates" but citing no discovery responses, admissions, or anything of the like to support the claim that the existence of these alleged facts were undisputed by Plaintiff);

- <u>Section I.C.1 ("Plaintiffs Cannot Meet the Requirements of Reformation")</u>. *See* Dkt. 153-1 at 17:2-13 (baldly asserting, with citation to literally *nothing*, much less to a discovery response by Plaintiff, that "Plaintiffs do not identify any mistake in a disclosure that would justify reforming the Plan" and that "there is no evidence that Defendants engaged in wrongful conduct, such as undue influence, duress, or fraud, or that Plaintiffs' assent was induced by Defendants' misrepresentations and Plaintiffs were justified in relying on the alleged misrepresentations" (internal quotation marks omitted)); and

- <u>Section I.C.2 ("Plaintiffs Are Not Entitled to Equitable Estoppel")</u>. *See* Dkt. 153-1 at 17-19 (similarly claiming that Plaintiff could not demonstrate the elements of equitable estoppel, yet neither citing nor relying upon a single written discovery answer in which Plaintiff set forth or allegedly established that the facts on which he would rely established the absence of a genuine issue of material fact).[2]

Tellingly, this is true not only for the claims for which Plaintiff has the burden of proof, but even for the claims (e.g., affirmative defenses) for which Defendants bear the burden of production and proof.

It is crystal clear under the Supreme Court's decision in *Celotex* that moving for summary judgment in such a fashion is insufficient to meet the moving party's initial stage one burden, thereby requiring the denial of that motion even if the nonmoving party

---

[2] The remainder of Defendants' motion for summary judgment relates to the plan interpretation and illegal cutback claims, which do not involve the eleven declarations at issue; in any event, even these sections are similarly bereft of any reference to or reliance upon any discovery answers by Plaintiff. *See* Dkt. 153-1 at 19-25.

13

completely fails to respond. The moving party must instead cite "pleadings, depositions, answers to interrogatories, and admissions on file" to *prove* that the nonmoving party cannot establish the required elements, not merely so assert. *Celotex*, 477 U.S. at 323. The cases so holding are legion:

- "Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323;

- "[T]he movant may rely on depositions, answers to interrogatories, and the like, to demonstrate that the plaintiff has no evidence to prove his case and hence that there can be no factual dispute. But the movant must discharge the burden the Rules place upon him: It is not enough to move for summary judgment . . . with a conclusory assertion that the plaintiff has no evidence to prove his case." *Id.* at 328 (White, J., concurring);

- "Simply filing a summary judgment motion does not immediately compel the party opposing the motion to come forward with evidence demonstrating material issues of fact as to every element of its case. [T]his is a common misinterpretation of the Supreme Court decisions . . . . *Celotex* makes clear that before the non-moving party is required to produce evidence in opposition to the motion, the moving party must first satisfy its obligation of demonstrating that there are no factual issues [of material fact] warranting trial. . . . [It] always bears the initial responsibility of . . . identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file . . . . [T]he party opposing a motion for summary judgment must respond only after the moving party meets its initial burden. This initial burden remains with the moving party even when the issue involved is one on which the non-movant will bear the burden of proof at

14

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE DECLARATIONS
Case No. 5:17-CV-00235-JGB-SP (C.D. Cal.)

trial. Contrary to the defendant's assertions, the Court in *Celotex* did not hold that any time a party with the burden of proof at trial is faced with a motion for summary judgment it must come forward with competent evidence to support its theory of liability. . . ." (internal quotation marks omitted) *Russ*, 943 F.2d at 591-92;

- "A party who moves for summary judgment on the ground that the nonmoving party has no evidence must affirmatively show the absence of evidence in the record. . . . If there is literally no evidence in the record, the moving party may demonstrate this by reviewing for the court the admissions, interrogatories, and other exchanges between the parties that are in the record. Either way, however, the moving party must affirmatively demonstrate that there is no evidence in the record to support a judgment for the nonmoving party." *Doe v. Nat'l R.R. Passenger Corp.*, No. 2:94-cv-05064-HH, 1996 WL 92096 at *1 (E.D. Pa. Feb. 29, 1996) (quoting *Celotex*).

Defendants nowhere cite or rely upon Plaintiff's discovery answers to establish the alleged absence of a genuine issue of material fact. They accordingly fail to establish their initial burden, and as Defendants' own cases hold, "[i]f the moving party fails to bear the initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence." *Moyle v. Liberty Mut. Ret. Benefit Plan*, 263 F. Supp. 3d 999, 1008 (S.D. Cal. 2017); *see also* Dkt. 168 at 22-24 (noting that this same failure to satisfy Defendants' initial stage one burden requires denial of their motion for summary judgment on the merits).

That dispositive difference amply distinguishes the cases on which Defendants rely, in each of which the Defendant satisfied its initial burden and relied upon the discovery responses made by the nonmoving party. As noted *supra* at 3-7, Plaintiff in fact repeatedly disclosed that each of the class members listed on Exhibit B might have discoverable evidence, as well as disclosed that each of the class members whose personnel files were produced (which includes each of the eleven challenged class

members) might also have discoverable evidence. But even had that not been the case, Defendants neither satisfied their initial burden nor relied upon those discovery answers in filing their motion. *See also Schwartz v. O'Grady*, No. 1:86-cv-04243-JMC, 1990 WL 156274 at *11 (S.D.N.Y. Oct. 12, 1990) (applying this rule to deny summary judgment motion); *Rivera-Adams v. Wyeth*, No. 3:03-cv-01713-JAF, 2010 WL 5072541, at *5 (D.P.R. Dec. 8, 2010) (same).

In an appropriate case, it might be permissible to conclusively bind a party to erroneous or incomplete interrogatory answers, but this is not such a case. The class members were disclosed. Defendants knew their identity, their contact information, and their relevance. To the degree Defendants thought these disclosures were overbroad, they should have moved to compel, yet deliberately elected not to do so, and hence waived any objection. There was no Rule 26 violation in the present case, either based on the initial disclosures (which were indisputably accurate when made) nor after the class members were contacted and discovery terminated on July 6, 2020.

## II.   EXCLUSION OF THE DECLARATIONS WOULD BE UNWARRANTED.

Even were the failure to disclose the identity of specific class members already known to Defendants a violation of Rule 26, exclusion of the declarations of the eleven class members would be unwarranted. This is true for several reasons.

### A.   <u>Plaintiff's Disclosures Were Substantially Justified.</u>

The sole basis upon which Defendants seek to exclude the eleven class member declarations is Rule 37(c)(1). That provision expressly provides that exclusion cannot be ordered if the failure to disclose was "substantially justified." Fed. R. Civ. P. 37(c)(1). "Factors that a court may consider in determining whether there is substantial justification [under Rule 37(c)] include [1] the good faith or bad faith of the proponent in failing to make the disclosure [and] the proponent's willfulness or negligence in failing to make the disclosure and [2] failure of the movant in not raising the issue earlier; [3] whether circumstances beyond the proponent's control prevented him from making the disclosure timely; [4] whether the opposing party was surprised, e.g., did not know from

16

any other source the undisclosed information; and [5] whether the proponent reasonably believed [a] the matter was not in dispute or [b] the evidence only became relevant after some unanticipated evidence came to light." *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, MDL No. 1446, 2007 WL 5023541 at *2 (S.D. Tx. Feb. 1, 2007) (citing authority).

     <u>Good Faith</u>. Plaintiff believed in good faith that he had disclosed on several occasions that each class member might have relevant information (and that Defendants already knew this in any event). *See supra* at 3-7 (describing disclosures); Martin Decl. ¶ 6. Even if counsel was mistaken, it was not an attempt to hide these eleven class members from Defendants, nor an attempt to shield this information (much of which had already been shown in their personnel files) from discovery. Martin Decl. ¶ 6.

     <u>Failure of Defendants to Move</u>. This factor strongly favors Plaintiff. Defendants expressly threatened to file, and could easily have filed, a motion that sought to narrow the disclosures or compel specific identification of class members, but failed to do so.

     <u>Circumstances Beyond Plaintiff's Control</u>. There were over two thousand class members. Plaintiff could not contact them all, much less could Plaintiff anticipate what specific disclosures Defendants would assert these class members received that were not contained in their personnel files. When Defendants filed their motion for summary judgment in July 2020, Plaintiff promptly attempted to contact representative class members to confirm that those alleged disclosures were, in fact, not made to them. Martin Decl. ¶ 9.

     <u>Surprise</u>. This factor also strongly favors Plaintiff. Defendants clearly were not "surprised, e.g., did not know from any other source the undisclosed information." They already knew the identity of these class members and their contact information. They knew that class members would know what disclosures were made to them. They could contact these class members (or a representative sample) if they wished, but did not.

     <u>Reasonably Thought To Be Undisputed</u>. Plaintiff also reasonably believed that much of the content in the eleven declarations was not in dispute. These eleven

17

declarations largely confirm with admissible evidence what the contents of their personnel files reflect, which (as with the other two thousand class members) nearly uniformly reveal that the disclosures allegedly made by Defendants were not in fact received by the class. Only when Defendants filed their summary judgment motion and alleged that each class member had received a DVR notice, benefits statements, newsletters, and other documents that were not in their files did these declarations become necessary. Martin Decl. ¶ 8-9.

Other Evidence. Finally, for similar reasons, Plaintiff also believed that "the evidence only became relevant after some unanticipated evidence came to light"—in particular, the declaration of Sheryl Fleshin that Defendants submitted, for the first time, in support of their motion for summary judgment. At no time did Defendants *ever* mention that Ms. Fleshin allegedly knew what disclosures were made to the class; rather, she was listed by Defendants as purely a witness who would testify to the "Administration and Interpretation of the TRW Plan." Martin Decl. ¶ 8. For this reason, Ms. Fleshin was never deposed, because how the text of the Plan was "administered" or to be "interpreted" was irrelevant to the disclosure claims. Martin Decl. ¶ 8.

Yet, in moving for summary judgment, Defendants submitted a declaration from Ms. Fleshin in which she purported to claim to know that each class member received a wide variety of corporate literature that was nowhere in their personnel files: newsletters, benefit statements, DVR notices, etc. Fleshin Decl., Dkt. 153-69. Ms. Fleshin's declaration was (and remains) insufficient for a plethora of reasons, including that she does not indicate her personal knowledge of any of these facts she purportedly declares, and merely speculates that since it was Northrop's "practice" to fully disclose the ESL Offset, class members must have received these disclosures. Fleshin Decl. ¶¶ 7, 10, Dkt. 153-69. Regardless, this new evidence from a previously unknown witness on these points[3] was felt to compel a concrete response from the people with *actual* personal

---

[3] A different employee, Ms. Tuffley, had tangentially claimed to have knowledge of a small portion of these disclosures (e.g., the "benefits fair"), but Plaintiff demonstrated the

knowledge of what they received: the class members themselves. Martin Decl. ¶ 9. That decision reflects a "belief that the evidence only became relevant after some unanticipated evidence came to light." This final factor too favors Plaintiff.

Plaintiff acted in good faith and could not reasonably contact all two thousand class members about unspecific "literature" disclosures. Even if Plaintiff was mistaken, Defendants elected not to file a motion to narrow the disclosures and were not surprised by the identity of the class members. Further, Plaintiff believed the underlying facts were largely undisputed, and the unanticipated declaration of Ms. Fleshin in July 2020 generated the declarations at issue. Even if Plaintiff erred, there is substantial justification for the eleven challenged declarations, and the exclusion of that relevant evidence is unwarranted under either equity or Rule 37(c). *See Sako v. Wells Fargo Bank*, No. 3:14-cv-01034-GPC-JMA, 2016 WL 110513 at \*5-6 (S.D. Cal. Jan. 8, 2016) (finding failure to disclose "substantially justified" on similar facts and refusing to exclude declarations submitted in opposition to motion for summary judgment).

### B. <u>Any Failure to Disclose Was Harmless.</u>

Perhaps most critically, Rule 37(c) provides that evidence should not be excluded if the failure to timely disclose it was "harmless." Fed. R. Civ. P. 37(c)(1). Any failure to disclose here was harmless, for at least three independent reasons.

#### 1. <u>Defendants Would Have Done Nothing Different</u>.

First, and most obviously, Defendants would undeniably have done nothing at all different if these eleven class members had been expressly and individually revealed in discovery. That is the very definition of a "harmless" failure to disclose. The irrefutable proof of this fact is contained in Docket Nos. 178-4, 178-9 and 178-10.

---

insufficiency of her knowledge given her express admissions in deposition that she did not, in fact, know what information was revealed or disclosed as well as the ease through which Ms. Tuffley's counsel-sponsored recollection of these events can be impeached. *See* Dkt. 168 at 17; Dkt. 168-1 at 224; Dkt. 149-3 at 214:7-18 (revealing the deficiencies of Ms. Tuffley's recollection of events weeks ago, much less events three-plus decades ago).

On March 9, 2020, in response to Interrogatory No. 16, Plaintiff disclosed that he had communicated with two class members who he knew at that time had facts relevant to the suit: class member Fred Formosa (who had already been deposed pre-certification) and class member Dennis Noren. Pl.'s Sec. Am. Resps. at 24-27, Dkt. 178-10. Further, in November 2019, in response to Interrogatory No. 20, Plaintiff disclosed that in addition to Fred Formosa, Plaintiff had also had communications with three other class members with relevant information: Keith Maw, Dennis Noren, and Gary Gnauck. Pl.'s Resps. at 5-6, Dkt. 178-6.

Defendants assert that it suffered prejudice because, had the names of the eleven challenged class members been disclosed, it would have deposed them. This is the sole prejudice that Defendants assert. *See* Dkt. 178-1 at 5.

But the truth is otherwise. Class members Keith Maw, Dennis Noren, and Gary Gnauck were expressly disclosed. Yet Defendants did not depose any of them. The eleven class member declarants would have been no different. Defendants offer no reason why they would have elected to depose any of the eleven challenged declarants when they did not even elect to depose the three class members who had been disclosed far earlier and with whom Plaintiff had had individual, particularized conversations. They would not. And there is no evidence from Defendants to the contrary; nowhere do Defendants assert (much less provide evidence) that they would have deposed these eleven class members. Defendants instead deliberately decided after the class was certified that deposing any disclosed individual class members was simply not worth their time.

Any lingering doubt in this regard would be entirely dissipated by Dkt. 178-9. To reiterate: Defendants had requested the names of all class members to which counsel for Plaintiff had communicated, and Plaintiff had objected and responded that such information was privileged. Nonetheless, "out of an abundance of caution," on June 25, 2020, before the discovery cutoff date, Plaintiff listed every one of the 114 class

members with whom he had communicated as of that date, with their individual names and contact information as listed on Exhibit B.

How many of those individual class members did Defendants then depose?

Zero.

Plaintiff could not have disclosed the eleven challenged declarants in that June 25 written disclosure even if he had wanted to, since his counsel had not yet communicated with them. But even if those eleven class members had indeed been added to that list, it is flatly inconceivable that Defendants would have elected to depose those particular eleven names—or any of them—notwithstanding their deliberate decision not to depose *any* of the 110-plus individual class members after certification who <u>were</u> expressly and repeatedly disclosed by Plaintiff.

Thus, even if the failure to disclose these eleven names prevented Defendants from deposing them (though it bears repeating that Defendants, of course, already know their identity anyway), Defendants would not have deposed them. Any error was thus harmless. Defendants would not have done anything different. Exclusion is accordingly unwarranted pursuant to the express provisions of Rule 37(c)(1).

   2.   <u>The Failure to Depose The Declarants Does Not Cause Prejudice</u>.

Second, and independently, any failure to disclose would be harmless because there is no showing of any need to depose these eleven declarants, much less evidence that such a deposition would be necessary or material to respond to the factual claims these class members made in their declarations.

Defendants only discuss three of the eleven declarants in their moving papers: Ms. McDonald, Mr. Attard, and Mr. Harmon. Dkt. 178-1 at 6-7. Defendants nowhere mention the other eight declarants, much less establish what they allegedly believe would have been obtained in their "lost" opportunity to depose them, or why that omitted information would have been sufficient to compel the granting of their summary judgment motion. With respect to the remaining eight, then, the evidence is clearly insufficient to support exclusion: the mere desire to depose a witness, without a showing of what evidence could

reasonably be hoped to be obtained therein, is insufficient to obtain even a continuance of a summary judgment motion, much less the far more serious remedy of exclusion of relevant evidence therein. *Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 535 (5th Cir. 1999) (specific factual showing of evidence to be obtained required); *Keebler Co. v. Murray Bakery Prod.*, 866 F.2d 1386, 1388-90 (Fed. Cir. 1989) (same).

Moreover, with respect to the three declarants, Defendants themselves establish the absence of prejudice. Defendants simply assert that at a deposition, they could allegedly establish from the documents contained in the respective personnel files of these three declarants that they were allegedly mistaken. Dkt. 178-1 at 6-7 (asserting such an alleged showing as the only prejudice). But Defendants can already make these same points, both at trial and in connection with their pending motion. There is no need for a deposition to "prove" what is already contained in the personnel files produced in discovery and filed in connection with the summary judgment papers. There is simply no prejudice.

Nor would any such deposition create the <u>absence</u> of a genuine issue of material fact in any event. On summary judgment, all facts are viewed in favor of the nonmoving party. If the declarants swear they did not receive the documents in their files, the fact that those documents are there does not establish as a matter of law that they received them. Again: Defendants are free to make these same points at trial. But their inability to depose these declarants is harmless both in the abstract and, more particularly, on the pending motion. The depositions allegedly "lost" as a result of the failure to disclose in no universe establish as a matter of law the absence of a genuine issue of material fact.

### 3. Defendants Already Knew About These Eleven Class Members.

Third, and finally, any failure to disclose was also harmless because Defendants already knew the identity and contact information for these eleven declarants. "Failing to disclose a witness may be 'harmless' [under Rules 26 and 37] if the witness' identity is already known to the opposing party." Schwarzer, Tashima & Wagstaffe, *Federal Civil Procedure Before Trial* ¶ 11:333 (Rutter Group 2005) (citing Advisory Committee Notes on 1993 Amendments to FRCP 26(a)). It is beyond dispute that Defendants already had

22

the names and contact information of these eleven witnesses; indeed, it was only after Defendants themselves produced this information in discovery on the "Exhibit B" spreadsheet of class members that Plaintiff even knew these individuals existed.

The present case is accordingly entirely unlike the authorities upon which Defendants rely. For example, in *Benjamin v. B&H Educ., Inc.*, No. 3:13-cv-04993-VC, 2015 WL 6164891 (N.D. Cal. Oct. 16, 2015), the plaintiff failed to disclose "third-party" witnesses, not class members, and a particular third party was disclosed "in a long list of names offered in response to interrogatories" only by "his first name – but not his last name or any other identifying information." *Id*. at *2. It was that obviously incomplete disclosure that the court found "ridiculous," not the list itself. *Id*.[4]

By contrast, in the present case, each of the eleven declarants was not only listed on Defendants' own Exhibit B and in their personnel files produced in discovery (which is far from disclosing only a first name as in *Benjamin*), but those same documents also expressly included address and contact information for each of these eleven people. Defendants were thus both free and able to contact them, or set their deposition, as they wished.

Similarly, in *Bright v. Dennis Garberg & Assocs., Inc.*, No. 2:10-cv-09574-RGK-JC, 2012 WL 13006212 (C.D. Cal. Aug. 23, 2012), the defendants obtained signed declarations *weeks* before they filed their opposition to class certification, and particularly given the history of counsel's prior failures to disclose discovery in that case, Judge Matz concluded that counsel had communicated with these class members even substantially

---

[4] Defendants also undeniably quote the holding in *Benjamin* out of context. Defendants say that Benjamin holds that "'catch all reference[s]' cannot satisfy Rule 26's requirement . . . ." Dkt. 178-1 at 9:11-12 (brackets in original). That's not at all what the court held. It simply referred to a discovery response that the court *labeled* as a "catch-all reference" in which the party said that *unnamed* "other current and former students" might be witnesses. The "catch-all" label was not at all the holding of the court; moreover, here, the eleven declarants were not unnamed "other employees" but rather individuals specifically identified in Defendants' own spreadsheet of class members and discovery-produced personnel files.

before those several weeks. *Id*. at \*3. By contrast, here, there is no dispute that Plaintiff obtained these declarations only *after discovery had closed* and promptly disclosed the declarations once obtained. Martin Decl. ¶ 9. Moreover, the exclusion in both *Bright* and related cases cited by Defendants involved exclusion at a class certification motion, not on the merits on summary judgment. *Id*. The exclusion of substantially-delayed declarations in that setting is far less harmful to the merits than the exclusion of relevant evidence on a dispositive motion, particularly when those declarations were timely exchanged once obtained as well as from individuals that Defendants themselves knew about and were free to contact and/or set for deposition.

By contrast, the present case is far more similar to *El Ranchito, Inc. v. City of Harvey*, 207 F. Supp. 2d 814 (N.D. Ill. 2002), than it is to any of Defendants' authorities. The failure to disclose was far more serious in that case than here: the plaintiff in *El Ranchito* failed to disclose *at all* two critical third party percipient witnesses to the events at issue in the lawsuit. *Id*. at 818. Yet the court held: "Although the nondisclosure was careless, the plaintiffs argue that it was harmless, and I agree. These are not surprise witnesses. Julio Rivera and Lisa Guillermo, employees of El Ranchito, were main actors in the events of May 21, 1998, known to the defendants to be such both then and since, and available and obvious subjects for deposition through the close of discovery." *Id*. So too here; each class member was a former employee of Defendants, and not only was their identity and contact information fully available, but Defendants knew that class members would obviously have personal knowledge of whatever disclosures were (or were not) made to them.

Even if the Court had not found the failure to disclose harmless (which it did), the remedy sought by Defendants—exclusion of relevant evidence—would have been overly harsh and inequitable. Hence the Court's decision that "[i]n the interests of fairness to the

defendants . . . I allow the defendants to depose Julio Rivera and Lisa Guillermo, the depositions to be taken within three weeks of the date of this order." *Id*.[5]

Defendants knew about the identity of these eleven class members, knew their contact information, knew that they had information about what disclosures (if any) had been made to them, and knew they could depose them at their leisure. In such a setting, the failure to disclose is harmless—even without the evidence available in Dkt. Nos. 178-4, 178-9 and 178-10—and exclusion would be unjustified.

## III.    THE MOTION SHOULD BE HEARD ON DECEMBER 21, 2020.

Although Defendants have separately noticed their motion to be heard on October 19, 2020, there is no need for a separate hearing date. Rather than burden this Court and the parties with multiple hearings, Plaintiffs submit that it would be most efficient for any hearing on the motion to be held on December 21, 2020, at the same time as the other objections to the evidence and other documents submitted with the pending cross-motions for summary judgment.

## <u>CONCLUSION</u>

Plaintiff disclosed the identities of the eleven challenged class members, Defendants already knew them (and their contact information), and Defendants would not have done anything differently had an earlier disclosure been made. This Court should resolve the cross-motions for summary judgment on the merits and not exclude relevant evidence as to what disclosures were allegedly made to class members.

---

[5] A similar remedy could be available here, particularly since the motion for summary judgment is not set to be heard until late December and the evidence that Defendants could even possibly expect to obtain from such depositions so minimally relevant.

1   Dated: September 28, 2020                    By: /s/  *Shaun P. Martin*

2                                                Shaun P. Martin (SBN 158480)
                                                 5998 Alcala Park
3                                                San Diego, CA 92110
                                                 Telephone: (619) 260-2347
4                                                Facsimile: (619) 260-7933

5
                                                 **STRIS & MAHER LLP**
6

7                                                Peter K. Stris (SBN 216226)
                                                 Elizabeth Brannen (SBN 226234)
8                                                Dana Berkowitz (SBN 303094)
                                                 Victor O'Connell (SBN 288094)
9                                                777 South Figueroa Street, Suite 1830
                                                 Los Angeles, CA 90017
10                                               Telephone: (213) 995-6800
                                                 Facsimile: (213) 261-0299
11

12
                                                 *Counsel for Plaintiff*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE DECLARATIONS**
**Case No. 5:17-CV-00235-JGB-SP (C.D. Cal.)**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

  I, Shaun Martin, hereby certify that on this 28th day of September 2020, I served the foregoing document by CM/ECF on all counsel of record.


Dated: September 28, 2020       By: _/s/  Shaun P. Martin_

27